[No. 6195. Decided August 10, 1906.]

THOMAS PETERSON et al., Appellants, v. J. W. HICKS et al., Respondents.[1]

FRAUDS, STATUTE OF—CONTRACT TO CONVEY LAND—PART PERFORMANCE. Where the plaintiffs, having an advantageous contract to buy real premises and being unable to raise the price, entered into an oral contract whereby defendant agreed to advance the price, take title and give a bond for a deed, in consideration of a return of the advance plus one hundred dollars within one year, there was such a part performance of the oral agreement as to take the case out of the operation of the statute of frauds, where the plaintiffs took peaceable possession and made improvements by papering rooms and repairing buildings.

TRUSTS—CONSTRUCTIVE FRAUD—SPECIFIC PERFORMANCE—STATUTE OF FRAUDS. Where defendant advances money and takes title to premises purchased at a profit by the plaintiffs, agreeing orally to make a bond for a deed to them in consideration of the repayment of a certain sum within one year, which premises the defendant could have secured in no other way, a constructive fraud arises, upon defendant's refusing to make the bond for a deed, sufficiently to create a constructive trust in favor of the plaintiffs, which would not fall within the statute of frauds, regardless of the taking of possession by the plaintiffs; and specific performance of the oral agreement will be decreed.

PRINCIPAL AND AGENT—HUSBAND AND WIFE—RATIFICATION. Where the defendant's wife avails herself of an oral contract made by her husband whereby she invested her separate property in real estate in ignorance of the terms of the agreement, she cannot ratify his acts in part, retaining the property, and at the same time deny his authority to make the agreement and refuse to carry out its terms.

Appeal from a judgment of the superior court for Chehalis county, Irwin, J., entered November 21, 1905, upon

[1]Reported in 86 Pac. 634.

findings in favor of the defendants, after a trial on the merits before the court without a jury, in an action for specific performance. Reversed.

*W. H. Abel* and *T. H. McKay,* for appellants.

*A. M. Wade* and *J. A. Hutcheson,* for respondents.

CROW, J.—On May 29, 1905, one Peter Feley and his wife held the fee simple title to a certain dwelling house and lot in the city of Aberdeen. On said date the appellants Peterson and wife entered into an oral contract with them to purchase said real estate for $650, and were given two days' time within which to raise the money to close the deal. The sale was being made through one Neuman, a real estate agent acting for the Feleys. Appellant Peterson, being disappointed in securing money, reported that fact to Neuman, who offered to assist him in raising it elsewhere. About that time Neuman met the respondent J. W. Hicks, who advised him that he had some money to invest. Mr. Neuman showed him certain property, and in doing so passed the Feley place, to which he called Mr. Hicks' attention, telling him of Peterson's agreement to purchase, and suggested that it would be a good investment for Mr. Hicks to let Peterson have the money to complete his trade. The evidence shows, and the trial court found, that although the place was selling for $650, it was worth $900. Mr. Hicks, in an interview with Peterson and Neuman, agreed to advance $650 for Peterson, to take a deed in his own name, and to permit Peterson to go into possession without rent. Peterson was to repay him $750, $25 per month for one year and the remainder at the end of the year. Mr. Hicks was to execute and deliver a bond for a deed, agreeing to convey the title to Peterson on full payment of the $750. Thereupon Mr. Peterson instructed Mr. Feley and his wife to convey the property directly to Hicks.

These agreements were all oral and were made on May 30. Mr. Peterson was obliged to close his deal on May 31, as

his option to purchase would then expire, and Mr. Feley had promised to let another party (not Hicks) buy the place if Peterson did not take it. Mr. Hicks expected to go to Seattle on the morning of May 31, so Peterson immediately employed one Demeree to prepare an abstract of title, a deed, and a bond for deed, he paying for the abstract. The abstract and deed were prepared and submitted to Hicks and his wife about seven o'clock on the morning of May 31, but as the abstracter did not have time to prepare the bond for a deed, Hicks and wife were to execute it after his return from Seattle. Peterson, being employed in his usual daily work, authorized Neuman to represent him, who with Demeree and the Feleys met Mr. Hicks and wife on the morning of May 31. The deed was delivered, and Mrs. Hicks gave two checks on her separate funds in payment of the $650. Hicks went to Seattle either on that day or the next. Feley commenced to move out of the property about June 5, and on that evening before he was out, Peterson commenced to move in. Hicks and wife executed no bond for a deed, but decided to keep the place themselves. They now claim that Peterson took possession against their protest, and after they had informed him they would not let him have the place. This is denied by Peterson and his witnesses. We think the evidence, although conflicting, sustains the contention of Peterson, as the circumstances surrounding the parties render their statement the more credible. About June 13, Hicks served a written notice on Peterson and wife to leave, who shortly thereafter commenced this action to compel a specific performance of the contract of Hicks, by which he agreed to deliver to them a bond for a deed. Hicks and wife, in their affirmative defense, allege that they were the owners of the property in fee simple; that the appellants had wrongfully taken possession; and prayed for restitution and damages. The trial court entered a decree in favor of respondents, adjudged them to be the owners of the property in fee simple,

and awarded them possession, damages, and costs. From said final judgment this appeal has been taken.

Some of the findings made by the trial judge were favorable to appellants, while others, which were contrary to their contentions, have been excepted to by them. In making the above statement, we have detailed the facts as we now find them from a review of all the evidence. In the main our findings agree with those of the trial judge. He, however, found that Peterson had wrongfully entered into possession of the property. This finding we cannot adopt, but, as above stated, now find that, pursuant to said oral contract, Peterson and wife entered into the actual, peaceable and exclusive possession of said property, and made certain repairs and alterations of appreciable value. Appellants also requested the trial court to find: "That in entering into said agreement, neither of the defendants had any intention to perform the same, but secretly intended to claim ownership in fee simple to said lands under the deeds from the Feleys." This finding, which was refused, we now make, it being sustained by the evidence.

On the trial the respondent Hicks admitted that he had orally contracted to purchase the property for Peterson, to take a deed in his own name, and to give a bond for a deed. There is no substantial conflict between his testimony and that of the witnesses for appellants as to what occurred at any time prior to the delivery of the deed from Feley and wife to Hicks and wife. The respondents herein claim, and the evidence shows, that the money paid for the place was the separate property of Mrs. Hicks. They also claim that she had no knowledge of the oral agreement to give a bond for a deed to the Petersons, until after the deed from Feley and wife had been delivered and the purchase money paid; that Mrs. Hicks then objected to carrying out the oral agreement, but said they would keep the place themselves; and that the respondent J. W. Hicks could not make a bond for a deed unless his wife joined in the execution thereof.

Respondents never offered to return the property to Feley or to transfer it to Peterson on payment of the purchase price, nor did they demand a return of the purchase money. Feley testified that he never sold to Hicks; that he had no contract with him, and that the deed to him was made at the request of Peterson to whom he had sold. Peterson testified that, as soon as he made his arrangements with Hicks, he ceased further attempts to raise money, and looked to Hicks for a bond for a deed. If Hicks and wife can sustain their position, they will secure $900 worth of real estate for $650, by availing themselves of the trade which Peterson had secured, and by refusing to carry out the oral agreement made by Hicks. This would be inequitable and unjust. Under the facts disclosed by the record, the appellants are entitled to a decree of specific performance. There was an undisputed oral contract between Hicks and Peterson for a bond for a deed. Peterson and wife partly performed their contract when they moved into the property and made improvements in the way of papering rooms and repairing buildings, and such part performance takes their verbal contract out of the operation of the statute of frauds. *Mudgett v. Clay,* 5 Wash. 103, 31 Pac. 424; *McKay v. Calderwood,* 37 Wash. 194, 79 Pac. 629.

Some question has been raised in the briefs as to whether the deed to Hicks was a mortgage or a transfer of the legal title with an agreement to convey to Peterson. We are of the opinion that a constructive trust arising *ex maleficio* occurred by operation of law in favor of the Petersons, which conferred upon them the right to specific performance of the oral contract for a bond for a deed. 3 Pomeroy, Equity Jurisprudence (3d ed.), § 1055. We fail to see where there is any material difference in the equitable principles involved herein and those announced by this court in *Borrow v. Borrow,* 34 Wash. 684, 76 Pac. 305, and upon the authority of that case, we hold the appellants Peterson and wife are entitled to specific performance. In *Avery v. Stewart,* 136 N. C. 426, 68 L. R. A. 776, cited by the appellants, the su-

preme court of North Carolina, in an able opinion, has announced equitable principles which we think should be applied here. That case, which may be examined with much profit, presents an unanswerable argument in favor of the contentions of the appellants Peterson and wife.

. The respondents contend that, as the oral contract between Hicks and Peterson was one to sell and convey real estate, and as Peterson wrongfully seized possession, said contract is within the statute of frauds, and cannot be enforced. We have found that Peterson's possession resulted from the oral contract and was not wrongful, but were we to find otherwise, still a constructive trust would arise in his favor, which would be excepted from the operation of the statute. *Borrow v. Borrow, supra.*

Mr. Bispham, in § 95, at page 149, of the sixth edition of his Principles of Equity, says:

"Constructive trusts, like resulting trusts, do not fall within the Statute of Frauds. Such has been the uniform doctrine of the English courts, and the same rule has been adopted in this country. Any other interpretation, indeed, would be in contravention rather than in fulfillment of the provisions of the statute; for it has been well said that it is not easy to see how such a trust could be established except by parol evidence, and that if such evidence were not competent, a 'statute made to prevent frauds would become a most potent instrument whereby to give them success.' "

In *Cutler v. Babcock*, 81 Wis. 195, 51 N. W. 420, 29 Am. St. 882, the supreme court of Wisconsin said:

"An agreement by one person to purchase land for another, and the purchase of the same accordingly, under circumstances which would amount to a fraud upon the latter if the former were allowed to repudiate his promise, is not within the statute."

See, also, *Parker v. Catron,* 27 Ky. Law 536, 85 S. W. 740. The contract, therefore, was not within the statute of frauds, and could be enforced even if Peterson's possession did not

result therefrom. Respondents contend that Hicks was guilty of no fraud, but in good faith intended to perform this oral contract, and that Mrs. Hicks was under no obligation to convey under an oral contract made by him to which she did not assent. We think the facts show constructive fraud. Mr. Peterson had his oral contract of purchase, which Feley was ready to perform. He had expected to raise the money elsewhere, but was disappointed. He secured a promise of the money from Hicks, and thereupon ceased further effort to raise it. Upon his request the property was deeded to Mr. Hicks. Thereby Mr. Hicks secured for $650 property of the value of $900, making a profit of $250 on Peterson's bargain, which did not belong to him. He could not have secured a deed in any other way. Whether he intended a fraud or not, he was at least guilty of constructive fraud sufficiently to create a constructive trust.

Respondents further contend that, although Mr. Hicks was the agent of his wife, he was not authorized to make an investment of this character, and that Mrs. Hicks was not bound by his oral contract. It appears, however, that Mrs. Hicks ratified his acts by availing herself of the profit involved in his contract. She is retaining the title which he fraudulently obtained. She cannot ratify his acts in part and renounce in part. If she ratifies the contract and enjoys the benefits, she must also assume its burdens. She is in no position to profit by his bargain, and still refuse specific performance.

The judgment of the honorable superior court is reversed, and the cause remanded, with instructions to enter a decree for specific performance in accordance with the prayer of the complaint.

Mount, C. J., Rudkin, and Dunbar, JJ., concur.