[No. 23338.   Department Two.   April 8, 1932.]

W. J. Speer *et al.*, *Respondents*, v. James Campbell *et al.*, *Appellants*, Will H. Morris *et al.*, *Defendants.*[1]

*W. H. Beatty* and *Morris & Dubuar*, for appellants.
*Newman H. Clark*, for respondents.

Holcomb, J.—This action was brought by the original respondents against appellants and the other defendants and their wives, who have been dismissed from the action, to recover $2,500. The original plaintiffs in the lower court were W. J. Speer and wife, but pending this appeal W. J. Speer was accidentally killed, and his widow, Elizabeth Speer, has been appointed and qualified as administratrix and has been substituted herein in her own behalf and in her representative capacity.

The complaint of respondents alleged that, on about July 9, 1928, appellants and the other defendants secured from respondent W. J. Speer a bill of sale of

[1]Reported in 9 P. (2d) 1100.

certain machinery then owned by respondents by presenting the same at their residence and at the time orally agreeing to pay respondents $2,500 therefor; that the bill of sale, which was executed to defendant Morris as grantee, was presented by one K. P. West for and on behalf of appellants and the other defendants; that West secured the same upon a promise that appellants and defendants should pay $2,500 therefor; and that appellants and the other defendants received possession of the machinery and equipment, but never paid the $2,500, or any part thereof.

They further alleged that appellants and defendants conspired together and hired West to defraud respondents of their property; that defendant Beatty took a false acknowledgment to the bill of sale; that West acted under the direction and with the full knowledge, acquiescence, consent and instruction of appellants and the other defendants; that, subsequent to July 9, 1928, defendant Morris frequently promised to obtain the money for the bill of sale for respondents.

Appellants and defendants by their answers, as amended at the trial, admitted the execution of the bill of sale, the possession of the greater portion of the property by them, or one of them; that defendants Morris and Beatty were attorneys for appellants, and that $2,500 had not been paid respondents. The remaining portions of the complaint were denied. They further averred that the property which actually came into the possession of appellants did not exceed the value of $587.

At the close of the evidence for respondents, appellants and defendants separately challenged the sufficiency thereof and moved for dismissal. The motions being denied, they submitted their evidence. At the close of all of the evidence, appellants and defendants

again separately challenged the sufficiency of the evidence and moved for dismissal and for directed verdict.

Neither motion being granted, the court instructed the jury and submitted certain special interrogatories to the jury to be answered by them, which were answered to the effect that West represented and promised respondents that $2,500 was to be paid in consideration for the bill of sale; that appellant Campbell had actual and full knowledge of West's alleged representations and promises to respondents at the time appellant Campbell received and accepted the machinery pursuant to the bill of sale; that defendant Morris had actual and full knowledge of West's alleged representations and promises to respondents at the time he received and accepted the bill of sale; and that defendant Morris was the agent for and acting for appellant in the transaction involved in this case.

The jury were instructed that, if they found for respondents, their verdict should be for $2,500.

After the verdicts of the jury were returned, appellants and defendant Morris separately moved for judgment n. o. v. or for a new trial, and the motion for judgment n. o. v. was granted as to defendant Morris. The motion was denied as to these appellants, the motion for a new trial was also denied, and judgment for $2,500 entered against appellants, from which they have appealed.

When motions for judgment at the close of respondents' case were interposed, the trial court made a fair and full summary of the evidence which is fully sustained by the record. We hereby adopt it and, with certain abbreviations of names and changes of titles, here reproduce it.

From the evidence introduced by respondents, the

jury were warranted in believing that the facts were substantially as follows:

That respondents had loaned money at various times prior to August, 1927, to Rowland Valve Sales Company, a corporation, and to K. P. West, one of the officers of that corporation. To secure $2,500 of the money, the Rowland Valve Sales Company executed a certain chattel mortgage covering the machinery. This chattel mortgage was foreclosed while the Rowland Valve Sales Company was in receivership, by virtue of which proceeding respondents became the owners of the personal property described. This machinery was at all times in a building owned by appellants Campbell, and physical delivery of the machinery to respondents may never have occurred.

On about July 7, 1928, K. P. West went to the home of respondents with a bill of sale drawn, covering this machinery, running to Will H. Morris; the bill of sale was executed by W. J. Speer and witnessed by two other members of the household, and at the time West stated that, in exchange for the bill of sale, he was to get $2,500, which he would bring out to respondents within an hour or so.

At the time these representations were made, Will H. Morris, attorney for appellant Campbell, and a Mr. Swanberg, a relation by marriage to Campbell, and who was in charge of the building in which the machinery was at all times located, were in West's automobile outside respondents' home. Defendant Beatty, one of Campbell's attorneys, had been brought along to act as a notary public, and did act as such. There is some dispute as to the date of the notarial acknowledgment, respondents claiming that the bill of sale was executed on July 7, 1928, but defendants claim that the seal was actually affixed on July 14, 1928, which is a

later date than the date of the bill of sale. It is dated July 9, 1928.

W. J. Speer, by reason of a mental breakdown, was unable to testify. He was placed upon the witness stand, and had no recollection whatever as to any part of the transaction. As to what he may have known with reference to the bill of sale, was not disclosed by the evidence.

The other members of the household overheard the promise to pay $2,500, but did not know from whom the money was to come nor the character of the document executed, and affirmatively stated that, at the time they witnessed the document, it did not have attached to it any inventory of machinery. West not returning shortly with the money, as agreed, respondents went looking for him, going first to Campbell, who referred them to Beatty, who in turn referred them to Morris. They stated that Morris told them that they had signed a paper and had signed their rights away, but that he would endeavor to get their money for them from West. He further stated that West was a crook.

The matter stood in this fashion for some time, there being two or three conferences between Morris and respondents, during which Morris stated to them that he was working on the matter and hoped to be able to force another attorney, naming him, to disgorge, claiming that this attorney had something to do with the Rowland Valve Sales Company transactions. Finally, respondents consulted another lawyer, who, in turn, consulted with that attorney and Morris, and thereupon brought this action.

After the conclusion of the evidence in behalf of appellants and defendants, in connection with their challenge to the sufficiency of the evidence and motions for dismissal and directed verdict, the court summa-

rized their evidence very fairly and fully, substantially as follows:

The testimony on behalf of defendants is substantially that defendant Campbell had made many advances to West, and that Campbell employed Morris as his attorney to proceed against West to effect collections thereon. Morris testified that he got in touch with West and attempted to make collection for certain open account matters, as well as for a promissory note for $2,550 which was past due. West told Morris that he could acquire this machinery, and would transfer the same to Campbell for the cancellation of his note. Morris submitted the proposition to Campbell, who agreed to it; West requested Morris to draw the bill of sale; Morris told Beatty, an attorney who offices with Campbell, to draw the bill of sale and to obtain the inventory to be attached thereto from the inventory filed in the receivership files of the Rowland Valve Sales Company.

Beatty did this, turning the bill of sale over to Morris, who, in turn, delivered it to West, and West, according to Morris, went out and had the same signed and witnessed and returned with it to Morris; that Morris was named as purchaser in the bill of sale as a matter of convenience; that the date of the instrument was July 9, 1928, which was the actual date that West secured the signature of W. J. Speer; and that, when the executed bill of sale was returned to Morris, Morris observed that there was no notarial acknowledgment and requested the same.

His office assistant being absent, Morris called Beatty to go and get the acknowledgment, and Beatty, Morris and Swanberg went out in West's car to the Speer home for that purpose, which was the only time they were ever all there; that W. J. Speer was not then

there, but was at a public market, to which they all drove, where Beatty took W. J. Speer's acknowledgment and Beatty then proceeded to the court house and recorded the bill of sale.

Morris testified that this entire transaction was above board; that he did not know what arrangement West had made with the Speers; that the property was taken innocently in exchange for a valuable consideration, namely, the cancellation of the promissory note for $2,550 above mentioned.

The trial court instructed the jury that there was no proof of fraud and conspiracy on the part of appellants and defendants, and withdrew from their consideration all allegations thereof in the complaint. It further instructed the jury that, as a matter of law, West, at the time of his dealing with respondents in connection with the bill of sale, was not the agent of appellants or defendants, nor was he acting within the scope of his authority. It also instructed the jury that the basis of liability, if any, against appellants or other defendants was the adoption and ratification of the acts of West with the full knowledge of West's representations and promises. In that connection, the jury were further instructed that, in order to return a verdict against appellants or defendants, they should find, first, that West represented to respondents that he would obtain $2,500 for the bill of sale; and second, that the unauthorized act of West was ratified and adopted by appellants or defendants with full knowledge of the representations and promises.

Although twenty-two errors are assigned by appellants, the principal argument is made under their complaints of error in overruling their challenge to the sufficiency of the evidence, in denying their motions for judgment n. o. v. or for a new trial, and in enter-

ing judgment against them for $2,500 and costs, or any sum.

It is strenuously insisted by appellants that there was no actual and full knowledge of any representations made by West to respondents; that West never was the agent of appellants, and under the law of the case as given to the jury by the trial court, there was no evidence whatever, or inference from evidence, to sustain the verdict and special findings of the jury.

It must be remembered that West did not negotiate with respondents for a bill of sale to himself. The bill of sale named Morris as grantee. Morris and Beatty were both then the attorneys for appellants. All of the parties knew that the machinery and equipment were security to respondents to the extent of $2,500 for money owed by the insolvent corporation, in which appellants and West were largely financially interested. This machinery and equipment had always been in the building owned by appellants, and remained in the same place, except what was admittedly sold, at all times after the execution of the bill of sale in July, 1928, until the time of trial. Since West was not procuring a bill of sale to himself, but to Morris, he was certainly acting as agent for Morris at that time in obtaining it. While Morris undoubtedly acted in the best of faith and had no knowledge of what representations were made by West to respondents, that very circumstance was evidence of agency on the part of West. Morris was also agent and attorney for appellants.

Appellants remained in possession of the machinery and equipment conveyed by the bill of sale to Morris. Undoubtedly, that was the intention of Morris and appellants. But respondents, holding a mortgage on the same chattels which they could enforce, had a right to

expect payment of that much of their debt secured by the mortgage from whoever purchased the chattels. .

The consideration recited in the bill of sale was the mere nominal consideration of ten dollars. It could not be presumed that respondents, having a valid incumbrance against the same chattels for $2,500, would voluntarily convey it to Morris, who admittedly was acting as attorney for appellants, for the nominal sum of ten dollars, or any lesser sum than the amount of their mortgage. It would be neither good sense nor justice to so consider.

When, therefore, appellants took the chattels with full knowledge that they had been mortgaged to secure a debt to the extent of $2,500, that the mortgage had not been paid in whole or in part, and that the bill of sale for the chattels had been made to their attorney and agent, and that the consideration therefor had not been paid, appellants have no legal or equitable right to attempt to escape payment and still retain the property.

Cases cited by appellants, such as *Williams v. Stearns*, 59 Ohio 28, 51 N. E. 439, adopting the principle that there can be no ratification by the alleged principal unless authority to represent him has been assumed by the alleged agent, and that the agent must have contracted as agent and not on his own account, *Backhaus v. Buells*, 43 Ore. 558, 72 Pac. 976, 73 Pac. 342, and others, are contrary to the rule of decision adopted in this state.

While the case of *Peterson v. Hicks*, 43 Wash. 412, 86 Pac. 634, cited and relied upon by respondents, is not exactly apt, for the reason that it was there admitted by both husband and wife that the husband was the wife's agent at the time of the transaction, but that he was not authorized to make an investment of the character involved, and that his wife was therefore

not bound by his oral contract. However, the decision leans in that direction. *Steward v. Church*, 108 Me. 83, 79 Atl. 11, cited by appellants, on similar facts, held directly contrary to the *Peterson* case. The *Steward* case would not, therefore, be followed in this state. We find cases, however, which hold that it is necessary to a ratification that the act should have been done by one who was, in fact, acting as an agent, but it is not necessary that he should have been understood to be such by the party with whom he was dealing. *Hayward v. Langmaid,* 181 Mass. 426, 63 N. E. 912; *Brooks v. Cook,* 141 Ala. 499, 38 South. 641.

While there is a conflict in authority upon this question, we are satisfied with the principle followed in this state in the *Peterson* case. In another case not cited by either party, *Barnett Bros. v. Lynn,* 118 Wash. 315, 203 Pac. 389, it was distinctly held that, if a principal not disclosed by a contract made by and in the name of his agent subsequently claims the benefit of. the contract, it thereby becomes his own to the same extent as if his name had originally appeared as the contracting party.

So in this case: West was not a principal, and therefore must have been an agent. He assumed to act as agent for Morris in procuring the bill of sale. His procurement was ostensibly for Morris, but actually for appellants, who desired to acquire it. Morris was attorney and agent for appellants, and whatever West did as his agent was undoubtedly for the benefit of appellants. At least, we consider that appellants could not retain the benefits of the contract without becoming liable to pay for the machinery, and the true consideration therefor could be deduced from all the circumstances and reasonable inferences, as well as the direct testimony of respondents that it was the sum of $2,500, which West agreed was to be paid. Appellants,

having availed themselves of the fruits of the contract, should not be permitted to repudiate it.

Without further discussion of the many points discussed by appellants, we consider the verdict of the jury founded on sufficient evidence to sustain it and the orders and judgment of the trial court were correct. They are therefore in all respects affirmed.

TOLMAN, C. J., MITCHELL, MAIN, and MILLARD, JJ., concur.