[No. 27532.  *En Banc.*  February 16, 1940.]

PASQUALE LUCCI *et al., Respondents,* v. GABRIELLO LUCCI *et al., Appellants.*[1]

[1]Reported in 99 P. (2d) 393.

*W. C. Hinman,* for appellants.

*John Wesley Dolby,* for respondents.

BEALS, J.—Pasquale Lucci and Agnesa Lucci, his wife, instituted this action against their son Gabriello Lucci and Maria Luissa Lucci, his wife, for the purpose of recovering judgment for the sum of $1,500, which they alleged they had loaned to the defendants. After the institution of the action, Pasquale Lucci died, and the executrices of his last will and testament were substituted for him as parties plaintiff.

The defendants answered separately, Gabriello Lucci, for himself and the marital community, denying generally the allegations of the complaint, while Maria Luissa Lucci, individually, pleaded that the deceased, Pasquale Lucci, prior to 1926, voluntarily gave her one thousand dollars, and, during the year 1928, gave her the further sum of five hundred dollars; and that, when she received the last mentioned sum, she, in payment, "in her separate and private capacity,

executed and delivered to" Pasquale Lucci a certain statement in writing, she denying, however, on belief, that a certain paper described by respondents in the bill of particulars (being a copy of the writing later introduced in evidence) was the document which she signed.

For a first affirmative defense, this defendant pleaded that, on some unspecified date, she was ready, willing, and able to repay to plaintiffs all the money due them, but that plaintiffs refused to accept the money; that, at plaintiffs' direction, the answering defendant placed the money in a bank; and that the bank subsequently failed, and the money was lost. For a second affirmative defense, the defendant alleged that plaintiffs were indebted to her for groceries in the sum of $520.75; while for a third defense, she pleaded the statute of limitations. She prayed, first, for dismissal of the action; second, that, if the court found for plaintiffs, she be allowed an offset for the money which she claims was tendered and subsequently lost by the failure of the bank; and third, that she have judgment against plaintiffs for the amount due her for groceries. No question concerning the statute of limitations is presented on this appeal.

The affirmative defenses being denied by the reply, the action was tried to the court, sitting with a jury. At the close of the evidence, the court directed the jury to return a verdict in favor of the plaintiffs, then instructing the jury to first find the amount of money due the plaintiffs from the defendants, and then deduct therefrom the sum of $520.75, provided that the jury found that defendants were indebted to plaintiffs in a greater amount. The jury returned a verdict in favor of plaintiffs for the sum of $979.25, which indicates that the jury, under the instructions of the court, found that defendants owed the plaintiffs $1,500,

which, after deducting the amount which the court instructed them to deduct, left the amount of the verdict. ·From a judgment in plaintiffs' favor entered upon the verdict, defendants have appealed.

The appeal was argued to Department Two of this court, June 22, 1939. An opinion was filed and published in our temporary Advance Sheets, and in 91 P. (2d) 730, but was ordered withheld from publication in the permanent Reports, the judgment having been affirmed as modified. In due time, a petition for rehearing was filed, and an order was entered modifying the opinion. Thereafter, appellants filed a motion to recall the remittitur and a petition for rehearing, which motion and petition were granted, the order modifying the opinion was vacated, and the cause reassigned for argument before the court sitting *En Banc*. The case was argued to the entire court pursuant to such assignment, and is before the court for decision on the merits.

Error is assigned upon the instruction of the court directing the jury to return a verdict for the respondents; on the refusal of the trial court to give four instructions requested by appellants; upon the ruling of the trial court rejecting, on respondents' objection, certain evidence offered by appellants; on an instruction given by the trial court, which appellants allege constituted an improper comment on the evidence; and upon the denial of appellants' motions for a new trial.

Respondents, during the trial, called the appellant Maria Luissa Lucci as an adverse witness, and in the course of her testimony the witness admitted that she wrote and signed an instrument, which was introduced in evidence as plaintiffs' exhibit 1. This instrument bears date March 1, 1931, the witness insisting that the instrument was originally dated 1930, and that

the year was changed to 1931 after she signed the same. The writing is in Italian, and was, by a witness, translated as follows:

"March 1st. 1931. My father-in-law he loaned me fifteen hundred dollars this I will pay back and pay 4-1/2% interest, if I die my husband or my sons will pay back this debt to my father-in-law, or if both, my family. This is my signature.     LUISSELLA LUCCI."

The word translated *dollars* is in the original written *scudo*, which the testimony indicates is an Italian coin which the translator testified is the Italian equivalent of the word *dollar*. Appellants make some point of this, contending that, if they were indebted to respondents, the indebtedness should be reckoned in scudi, not dollars, the Italian scudo being now worth much less than a dollar.

The deceased, Pasquale Lucci, turned over to Maria Luissa Lucci *dollars*, not *scudi*, and we are convinced that, under the evidence, if respondents were entitled to judgment against appellants, the amount of the judgment should be for the amount of dollars due, and not otherwise. Dollars were loaned, and there is no possible basis for holding that it was the intention of the parties that an equal, or any, number of Italian *scudi* should be returned. Maria Luissa admitted that she borrowed the money from the deceased, Pasquale Lucci, and admitted writing and signing the document above referred to. She testified that the money was borrowed at different times, prior to the time she signed the document above referred to. The writing contains nothing which changed the contract, which had already been entered into, to repay the dollars which had been borrowed.

Respondents' objection to a question propounded to the witness by her counsel having been sustained, appellants offered to prove that the witness

had accumulated the sum of $808.28, which she offered to Pasquale, and that Pasquale told her to put it in the bank for him, and when he wanted it he would ask for it; that she did put it in the bank, and that the bank subsequently failed, resulting in the loss of the money. Appellants contended in the court below, and argue here, that they are entitled to a credit upon the indebtedness for this amount. Appellants contend that respondents, by introducing certain evidence in the case, had waived the right to object to the question propounded to Maria Luissa, upon the ground that the question called for evidence concerning a conversation or transaction between Maria Luissa and Pasquale, who died prior to the trial.

The statement of facts, which is not a direct transcript of all the testimony and the objections and argument of counsel, simply shows that the trial court sustained respondents' objection to a question, upon the ground that the question was subject to objection under Rem. Rev. Stat., § 1211 [P. C. § 7722], prohibiting, in certain cases, testimony by a party as to a conversation with a deceased person whose personal representatives were also parties to the action. Appellants then made the offer of proof above referred to, and the record simply states that the offer of proof was refused.

Assuming, without deciding, that, because of questions propounded by respondents' counsel prior to the time appellants made the offer of proof, respondents could not urge, as an objection to the evidence offered, that the same concerned a transaction with a deceased person who was represented on the trial by his personal representatives, the testimony offered was properly excluded as irrelevant and immaterial, and constituting no defense to the action. Appellants simply offered to prove by the witness Maria Luissa that she

was possessed of a certain sum of money, which she offered to Pasquale; that he told her to put it in the bank for him, and when he wanted it he would ask for it; that she did put it in the bank, and the bank subsequently failed. In their offer of proof, appellants did not state that the witness would testify that Pasquale directed her to deposit the money in any particular bank, or that she deposited the money in his name, or that the deposit was in any way earmarked for Pasquale.

The offer does not show a payment, or facts which in law constitute a tender. It amounts to no more than a casual conversation which resulted in postponing a payment which the witness offered to testify that she was, at the particular time, willing to make. Under the offer of proof, it can only be held that the money remained the property of appellants, in their possession, under their control, and at their risk. The court properly refused to admit the testimony offered.

The court instructed the jury: "You are instructed to bring in a verdict in favor of the plaintiffs." The court then instructed the jury:

"You are instructed to first find the amount in money due the plaintiffs, then deduct therefrom the sum of $520.75, provided you find a greater sum due the plaintiffs."

Appellants argue that, because the court left the jury free to determine the amount which appellants owed respondents, the verdict which the jury returned was not a directed verdict, and that the first instruction was erroneous, as constituting a comment on the evidence. It must be held that, on the entire record, the liability of appellants, as a marital community, to respondents was not disputed, and the trial court was evidently of the opinion that, in turn, the liability of respondents to appellants in the sum of $520.75, for

groceries received by respondents from appellants, was not disputed. When a trial court is of the opinion that, under the law and the facts, a plaintiff is clearly entitled to a verdict, the trial court may so instruct the jury, leaving them to determine the amount which plaintiff should recover. The trial court, evidently being of the opinion that the amount of appellants' indebtedness to respondents remained a question for the jury, properly instructed the jury upon that theory, and we find no error in these instructions of which appellants can complain.

Appellants assign error upon the refusal of the trial court to give four instructions which they requested. The first of these requested instructions was based upon the assumption that appellants were obligated to pay to respondents a certain sum in scudi, rather than in dollars. A reading of the entire record makes it clear that, if appellants were indebted to respondents, they were obligated to pay a sum in dollars, and in no other money. Appellants borrowed dollars, they charged and took credit for groceries delivered in dollars, and, beyond question, they owed dollars.

Appellants next contend that the trial court erred in refusing to give the following instruction which was requested:

"You are instructed that if you find from the evidence that the instrument was not signed by Gabriello Lucci neither he nor the community consisting of the defendants can be held for the obligation and you must find for them, unless you find that the defendant Gabriello Lucci authorized the same or the community received the same and benefited from the use of the money borrowed."

This instruction was properly refused. The evidence shows without dispute that Gabriello Lucci's wife, Maria Luissa Lucci, was managing the grocery store for the benefit of the community. Both appellants

testified that Gabriello could neither read nor write, and that she conducted the grocery business for the benefit of both. It also appears from the testimony of both appellants that the money loaned by the deceased, Pasquale Lucci, was used for the benefit of the community in building up the grocery business. The fact that the document above referred to was signed by the wife alone is entirely immaterial, the testimony of both appellants showing that by their mutual agreement she was the managing agent of the grocery business.

The third instruction requested by appellants, on the refusal of which they assign error, was based upon the theory that respondents, if entitled to any judgment against appellants, were entitled only to judgment in an amount equal to the value of a certain number of scudi, estimated in American dollars. As above stated, we hold that the evidence would not support the theory contended for by appellants.

Finally, appellants requested that the jury be instructed that, if they found that appellant Gabriello did not sign the writing above referred to, he could not individually be found liable to respondents. As above stated, the testimony of appellants themselves demonstrated their liability, joint and several, to respondents. The jury simply returned a verdict generally in favor of the respondents, the verdict simply being a finding in favor of the respondents in the amount specified.

Appellants' motion for a new trial having been denied, the court entered judgment on the verdict. The judgment, as prepared by respondents' counsel, awarded them judgment "against the defendants Gabriello Lucci *and Maria Lucci, his wife, and each of them,* and against the marital community composed of said defendants," for the amount of the verdict,

together with costs. The trial court, before signing the judgment, crossed out the words which we have italicized, so the judgment runs against appellant Gabriello Lucci and the community. Respondents took no cross-appeal from the refusal of the trial court to enter judgment against appellant wife.

■ In the Departmental opinion filed (written by the writer of this opinion), this court expressed the view that the judgment should not have run against Gabriello Lucci as an individual. Upon the rehearing, this matter was argued, and we have carefully re-examined the record. Appellants contend that the judgment should not have run against Gabriello Lucci, individually.

The verdict of the jury amounted to a finding of liability on the part of both appellants. The statement of facts before us is difficult to follow. It was first proposed by appellants. While the testimony is stated by way of question and answer, it does not appear to be a transcript of stenographic notes taken at the trial; at least, if it is such a transcript, the trial court was evidently of the opinion that it was most inaccurate. After the filing of this proposed statement, respondents proposed many amendments, also in the form of question and answer, but referring to the different lines of the respective pages of appellants' proposed statement, often changing the purport of the testimony. The trial court adopted the amendments proposed by respondents, but the portions of appellants' proposed statement which the trial court deemed incorrect, and correctly stated by respondents' amendments, were simply lined out, and the two proposals were bound under one cover, preceding the certificate of the trial court, who certified that "the foregoing statement of facts as amended contains all of the evidence," etc.

A statement of facts in this form imposes a great burden upon this court and renders understanding thereof difficult, as, to get a connected narrative of the testimony of each witness, reference must continually be had to two separate documents, causing broken continuity. No statement of facts in such form should be made part of a record on appeal.

The loaning of the money by Pasquale Lucci was admitted by everyone. Appellant Maria Luissa Lucci testified that she signed the writing in the Italian language, above referred to, "for money I borrowed from Pasquale Lucci," further stating that the total amount she received was $1,500; that she borrowed the money a little at a time, the first loan having been made the year she and her husband "built store on to home to go into business;" that a year or so later, Pasquale advanced more money to buy stock for the store; that the money was all "put into home, store and truck;" and that the home and truck were owned by herself and husband, standing in her husband's name. The witness testified that she ran the store, because her husband could neither read nor write; and that her husband gave the witness his pay checks, the proceeds of which she used to purchase stock for the store. Mr. and Mrs. Pasquale Lucci received groceries from the store over a considerable period of time, appellants, under the instruction of the court above referred to, having properly been allowed credit for these groceries as payments on the debt.

Appellant Gabriello Lucci testified first when called by respondents as an adverse witness, and later on his own behalf. He stated that he had nothing to do with the grocery store, "because I cannot read or write," but that he always gave his check to his wife, to be spent by her. He testified that he was engaged in some employment from which he earned about eighty

dollars a month, when employed full time. Gabriello also stated as follows:

"Q. Where do you live? A. 9103 8th Avenue South, Seattle. Q. Did you buy that place? A. Yes. Q. When? A. About fifteen years ago. Q. Did you build a store onto it after you bought it? A. Yes. Q. Where did you get the money to do that? A. From my wife. Q. Where did she get the money? A. From my father. Q. Do you own a truck? A. Yes. Q. Where did you get the money to pay for it? A. My wife gave it to me. Q. Where did she get it? A. From my father."

In view of the evidence, it is difficult to imagine how it can be contended that appellant Gabriello did not know that his father, Pasquale Lucci, was advancing considerable sums of money, which were being used for his benefit and the benefit of the community composed of appellants as husband and wife. Because of his lack of education, Gabriello left the conduct of the community grocery business to his wife, but from appellants' own testimony, it must be held that Gabriello knew of the advances made by his father, and that he approved thereof and accepted the benefits of the loans. The evidence introduced by respondents was to the effect that Gabriello was present when the money was turned over to his wife, but this appellants denied, and in this connection we consider only appellants' testimony and admitted facts.

As this court said, in the case of *Barnett Bros. v. Lynn,* 118 Wash. 315, 203 Pac. 389,

"If a principal, not disclosed by a contract made by and in the name of his agent, subsequently claims the benefit of the contract, it thereby becomes his own to the same extent as if his name had originally appeared as the contracting party,"

citing the case of *Great Lakes Towing Co. v. Mill Transportation Co.,* 155 Fed. 11, 22 L. R. A. (N. S.) 769.

In the case of *Johnson v. Wilbur-Ellis Co.,* 136 Wash. 340, 239 Pac. 1018, we said:

"It is a well-settled rule that one who voluntarily accepts the benefits of an act done by one assuming, even though without authority, to be his agent thereby ratifies the act and makes it his own with the burdens as well as with the benefits."

The case of *Speer v. Campbell,* 167 Wash. 544, 9 P. (2d) 1100, is to the same effect.

In the early case of *Peterson v. Hicks,* 43 Wash. 412, 86 Pac. 634, defendants, husband and wife, were sued for specific performance of an oral agreement made by the husband to execute and deliver a bond for a deed in favor of the plaintiff. The property was conveyed to defendant husband and paid for by Mrs. Hicks' checks, drawn on accounts which were her separate property. Defendant husband admitted that he had orally contracted to purchase the property for the plaintiff, take a deed in his own name, and give plaintiff a bond for a deed. Mrs. Hicks contended that she had no knowledge of this agreement on the part of her husband; that she had never agreed to join in the execution of a bond for a deed; and that she was not bound by her husband's unauthorized oral contract. This court reversed the judgment of the trial court in favor of the defendants, saying, *inter alia:*

"It appears, however, that Mrs. Hicks ratified his acts by availing herself of the profit involved in his contract. She is retaining the title which he fraudulently obtained. She cannot ratify his acts in part and renounce in part. If she ratifies the contract and enjoys the benefits, she must also assume its burdens. She is in no position to profit by his bargain, and still refuse specific performance."

In the case of *Bowers v. Good,* 52 Wash. 384, 100 Pac. 848, plaintiffs, husband and wife, sought to recover damages for breach of a contract to convey real estate.

It appeared that the wife had made the contract for the purchase, and that later the vendor, by way of cancellation of the contract, had returned to the wife the money which she had paid. Judgment was entered for the defendants, and the plaintiffs appealed. On behalf of the appellants, it was urged, among other things, that the appellant wife was without authority to release rights acquired by herself and her husband, the interest acquired being community property. On this phase of the case, this court said:

"But we think the husband is estopped from raising this question. In·this state the management and control of community property is vested in the husband, and the wife cannot, without his consent, make any valid contract with reference thereto, unless it be for necessaries for herself or the family. When, therefore, the husband knowingly permits the wife to deal with the community property, his consent to her acts and all of her acts is implied, and he cannot afterwards hold to those which redound to his benefit and repudiate those which are against his interest. He must accept the contract as an entirety, or repudiate it as an entirety, and in this instance he will not be permitted to say that his wife had authority to contract for the land, but did not have authority to settle and relinquish any right acquired thereunder."

In the case of *Fielding v. Ketler,* 86 Wash. 194, 149 Pac. 667, it was held that money borrowed by the wife from her mother gave rise to a community obligation, as well as an individual obligation on the part of the wife. Referring to this transaction, this court said: "It was established as a loan to the wife, during the existence of the status and relations of the community." Under the facts shown, it was held that the debt was a community obligation.

In *Balkema v. Grolimund,* 92 Wash. 326, 159 Pac. 127, it was sought to hold the community of the defendants as husband and wife, and the husband personally, upon

a promissory note executed by the wife. This court reversed a judgment of the superior court in favor of the plaintiff and against the husband and wife, both of whom appealed. It was held that the evidence did not support a personal judgment against the husband. The rule was laid down that the wife's individual note is not presumptively the joint liability of the husband. In the course of the opinion, however, this court said:

"Of course, we do not say the holders of the wife's note may never hold the husband personally too, since there may be instances where her borrowing is so clearly essential to the common estate, where it is so plainly ratified by the husband, or where the purchased property is so knowingly shared in or enjoyed by the husband that he also should personally respond. *Fielding v. Ketler*, 86 Wash. 194, 149 Pac. 667. But this is not matter of presumption. It must be shown by the facts none of which are offered here. The law is not unwilling but ready to fasten acquiescence on the husband, yet until the contrary is shown a wife's note is presumed to be hers alone."

This quotation, which was merely dicta, well states the rule which applies to the facts in the case at bar.

In the recent case of *Short v. Dolling*, 178 Wash. 467, 35 P. (2d) 82, it was held that the defendant husband was personally liable for a considerable sum, because, as this court said, the husband "having entrusted her [his wife] with authority, he may not accept the benefits of her contract without also incurring its obligations."

Several cases involving questions similar to that now under discussion have been presented to the courts of Louisiana, a community property state. In the case of *Brook-Mays & Co. v. Riles*, 12 La. App. 178, 125 So. 475, it appeared that the plaintiff sold a piano to the defendant wife, accepting from her a cash payment and her note for the balance. The piano was delivered

at the defendants' residence, where it was destroyed by fire. Plaintiff sued the husband and wife, the husband contending that he was not liable and appealing from an adverse judgment. It appeared that he had "regarded and dealt with the property as a community asset," and the court of appeal upheld the judgment against him.

In the case of *Colt Co. v. Robinson*, 16 La. App. 431, 134 So. 704, the same Louisiana court held a husband liable for a purchase made by the wife, it appearing that the property was purchased for, and inured to the benefit of, the community. The court said:

"It is apparent that if defendant did not authorize his wife to make the purchase, he ratified same, and we are of the opinion that the judgment holding him liable as head and master of the community for the purchase price was correct."

The Louisiana cases of *Werlein, Ltd. v. Madsen*, 10 La. App. 550, 120 So. 237, and *Standard Mfg. Co. v. Dupuis*, 6 La. App. 476, are to the same effect.

In the case at bar, it appears beyond question that appellant Gabriello Lucci constituted his wife his agent for the purpose of conducting the grocery business, she very evidently having full charge of the community finances; that Gabriello knew that his wife had borrowed considerable sums from Pasquale, his father, and that the money so borrowed had been invested for the benefit of the community and in the community business, and was represented in part by a truck which Gabriello testified he owned, and which, it is a fair inference from the evidence, he was using in his own business. While under the evidence it is difficult to understand why the trial court struck the name of appellant Maria Luissa Lucci from the judgment, it cannot be held that the entry of judgment against appellant Gabriello Lucci was error, as, under the facts

and the law, he, as well as his wife, was individually liable to respondents.

We find no merit in any other of appellants' assignments of error.

The judgment appealed from is affirmed.

ALL CONCUR.

