FRANK R. STEWARD et al. *vs.* CHARLES CHURCH AND CARRIE CHURCH.

Somerset.    Opinion March 3, 1911.

*Husband and Wife.    Agency of Husband.    Contract by Husband.    Implied Promise of Wife.    Ratification by Wife.    Evidence.*

1.  Where a husband and wife are living on a farm which the husband is carrying on, the fact that the title to the farm is in the wife does not show that he was carrying on the farm as her agent and does not make her liable for articles purchased by him for use on the farm.

2.  Where in such case the husband did not represent himself to be the agent of his wife in making the purchase, she cannot be held liable upon the ground of after-ratification.    The doctrine of ratification applies only in cases where a person without authority assumes to have authority to act for another.

3.  A promise by the wife to pay the vendor for articles purchased by the husband, cannot be logically inferred from the circumstance that the articles ultimately came into her hands.

4.  The fact that the wife authorized her husband to let a farm owned by her does not justify an inference that he was her agent in carrying on the farm.

5.  The fact that in making a lease of the farm and farming plant six months after the purchase of a farming implement by her husband the wife included the implement in the lease, does not justify the inference that she authorized it to be purchased on her credit.

On motion by defendant Carrie Church.  Sustained.

Action of assumpsit against Charles Church and Carrie Church, his wife, on an account annexed to recover the price of a cream separator, and for which said cream separator the defendant Charles Church had previously given to the plaintiffs his negotiable promissory note of the kind and form known as a Holmes' note. The bankruptcy of the defendant Charles Church was suggested on the docket, and the plaintiffs discontinued as to him by reason of his discharge in bankruptcy. Plea, the general issue. Verdict for plaintiffs against the defendant Carrie Church for $112.25, and she filed a general motion for a new trial.

The case is stated in the opinion.

*Walton & Walton*, for plaintiffs.

*Merrill & Merrill*, for defendants.

SITTING : EMERY, C. J., SAVAGE, SPEAR, CORNISH, KING, JJ.

EMERY, C. J.  Charles Church on June 25, 1904, purchased of the plaintiff a cream separator for use on the farm on which he lived in Skowhegan and he gave his negotiable note therefor. At the time of the sale the plaintiffs supposed Charles owned the farm and they sold him the separator upon his sole credit, having no intimation or reason to suppose that he was acting as agent for any one. Three years afterward, Aug. 8, 1907, learning that at the time of the sale the title to the Church farm was in Carrie Church, the wife of Charles Church, (having been conveyed by him to her Aug. 10, 1903) the plaintiffs brought this suit against Carrie Church upon account annexed for the price of the separator.

The action cannot be maintained against her upon the doctrine of ratification, as that doctrine applies only in cases where a person without authority assumes to have authority to act for another. A ratification is but the adoption of an act purporting to be the act of the party adopting it. *Keighley & Co.* v. *Durant*, 1901 A. C. 240. Charles Church did not assume to have authority from his wife to make the purchase.

Nor can the action be maintained upon the theory of a partnership between the husband and wife in carrying on a business in

which the separator was to be used.    *Haggett* v. *Hurley*, 91 Maine,
542.    Further, there is no estoppel to support the action even
though the separator may afterward have come into the wife's pos-
session and ownership, the plaintiffs not having been induced by
her conduct to make the sale to the husband.

The only ground upon which the action can be maintained is that
Mrs. Church did, in fact, authorize her husband to purchase the
separator for her upon her credit.    In other words, the plaintiffs
must prove they sold and delivered the separator to her through her
then authorized agent, authorized at the time of the sale.

Of course, the fact of agency can be established by proof of any
circumstances from which agency can reasonably be inferred, but
the circumstances must be of such nature as logically to authorize
such inference.    The relation of husband and wife is not enough.
Especially is that relation not enough to prove that the husband in
his business transactions is the agent of the wife.    Nor can a
promise by the wife to pay for property purchased by her husband
be implied from the circumstance that the property came ultimately
into her hands.    *Ferguson* v. *Spear*, 65 Maine, 277, page 279.
Nor is the fact that the wife owns the plant on which, or with
which, the business is carried on, sufficient evidence of authority
from her for her husband to make purchases on her credit for
use in the business.    *Stevens* v. *Mayberry*, 82 Maine, 65.    It does
not logically follow from a wife's ownership of a farm, or farm
animals, that she is carrying on the farming business there, or has
made her husband her agent to carry on the business for her.

It remains to consider what other evidence there is of sufficient
probative force to establish the proposition that at the time of the
sale of the separator by the plaintiffs Mrs. Church, the wife, had
in fact made her husband her business agent to the extent of
authorizing him to purchase this separator for her, and upon her
credit.    The following appears to be undisputed, viz:    Charles
Church having (April, 1902) obtained title to the farm subject to
a mortgage, went into occupation of it and farmed it, and in
August, 1903, conveyed it to his wife, subject to the mortgage
which the wife assumed.    Before conveying to his wife he

carried on the farm on his own account, and continued to do so afterward as far as outward appearances went. The neighbors did not notice any change in the management, and there was no evidence that after the conveyance to the wife she gave any directions as to how the farm or the business should be managed, or bought anything for the farm, or paid for anything bought by her husband for the farm, or sold off the farm any of its products or received any pay for them. About January 1, 1905, however, some six months after the purchase of the separator by the husband and when the wife was not living on the farm but at North Jay, a Mr. Kenney talked with her about leasing the farm, inquired of her what she would ask for the use of it, etc. She answered that her husband was sick of staying there and they would let it, that she "had no idea what it was worth" to let, but that any arrangement Mr. Kenney could make with her husband would be satisfactory to her. Mr. Kenney thereupon made an agreement with the husband to take a lease of the whole plant, farm, farming implements, tools, live stock, household goods, etc. The money rental was arranged on the basis of five per cent upon the estimated money value of all the property. A written lease embodying this agreement was prepared by them, Mr. Kenney and Mr. Church, the husband. In this draft Mr. Church included several farming implements unquestionably his own so far as appears, and he also included the separator. The wife did not sign this draft but had another draft made dated January 5, 1905 (six months after the purchase of the separator) which draft she and Mr. Kenney signed. Charles Church was not named as a party in either draft. In the second draft was practically the same enumeration as in the final draft, of farming implements, tools, household goods, etc., including the separator. The only difference in the enumeration was that in the first draft "one cream separator" was named, while in the second the enumeration was of "one cream separator in good running condition."

We do not think that authority from the wife to the husband to buy the separator on her credit is a logical inference from the fact that six months afterward she assured an applicant for a lease of the

farm that any arrangement he could make with her husband would be satisfactory to her. Giving authority to sell or let a plant does not imply that the agent appointed for that purpose had been the agent of the owner to carry on business there in the past. But it does not appear that she did make her husband her agent to lease the farm. He had no directions nor authority to find a tenant. He was simply authorized to make such arrangements for the lease of the farm to Kenney as would be satisfactory to himself. The more reasonable inference would seem to be that, while the title to the farm and some of the stock was in the wife, the business was the husband's, that the leasing the plant was his matter rather than hers. This inference is also supported by her statement to Kenney that "she had no idea what it (the farming plant) was worth," to lease. This quite clearly indicates that she had not been carrying on the farm herself.

Considerable stress is laid by the plaintiffs on the circumstance that the separator was enumerated in the schedule of the personal property included in the lease of the farm. It is argued that this shows that she then claimed to own the separator. In view of all the circumstances even that seems a doubtful inference. The lessee, by his agreement both with the wife and husband, was to have all the personal property, whichever owned it, included in the lease. The inclusion of all the articles in one schedule without specification of the ownership of each would hardly, in view of that agreement, be an assertion that she owned them all and her husband none. Moreover, it appears from the evidence for the plaintiff that several important items enumerated, such as a mowing machine, a horse rake, etc., had been purchased and paid for by the husband, and there is no evidence that he had given or sold them to his wife;— still further it was the husband who included the separator in the enumeration. The wife merely adopted his enumeration.

That the separator was more favorably described in the second draft of the lease hardly implies a claim of ownership. It is entirely consistent with a mere wifely interest in the property and business of her husband.

But, assuming it could be fairly inferred from the circumstances of the lease that she did then claim to own the separator, it does not follow, is not a logical nor legal inference, that she claimed to own it six months before, or that she had authorized its purchase of the plaintiffs. Her claiming to own it six months after its sale by the plaintiffs does not imply that she was the purchaser at that sale. No promise from Mrs. Church to pay the plaintiffs is implicable from the fact (if it were a fact) that the separator was claimed by her, or even became hers, six months afterward. *Ferguson* v. *Spear*, 65 Maine, 277, page 279.

On the other hand, both Mrs. Church and her husband testified positively that she had nothing to do with the purchase of the separator, or with the management of the farm, or with the business for which the separator was purchased. We think the evidence that she did, if indeed there be any, is too slight to sustain a verdict against that denial.

Several cases are cited by the plaintiffs in which the wife was held to have authorized the purchase of materials by her husband for erecting or repairing buildings on her land, it appearing that she knew at the time they were so purchased and used. The difference between those cases and this is manifest. Here there was no addition to the value of the real estate. The case *Merrick* v. *Plumley*, 99 Mass. 566, was an action of trespass by the wife for taking stone from a quarry on a farm the title to which was in her. The defense was a license from her husband. She admitted that she left the management of the quarry to him, and it also appeared that she knew at the time that the stone was being taken and under that license.

In *Jefferds* v. *Alvard*, 151 Mass. 94, the wife admitted that she employed her husband to carry on the farm for her, and the husband testified that his wife told him to buy anything that was needed or that he wanted for the farm. The action was for fertilizers used on the wife's farm. In *Lowell* v. *Williams*, 125 Mass. 439, the action was for fertilizers, farming tools, etc., delivered to the husband for use on the wife's farm on which both resided. The evidence was not reported, the case coming before the court on

exceptions only. Questions of law only were presented and decided. The sufficiency of the evidence to sustain the verdict was not mooted. We have examined all the cases cited by the plaintiff and made some independent research and find no case where the wife was held liable upon evidence as slight as the evidence in this case.

*Motion sustained.*
*Verdict set aside.*