CYCLONE FENCE COMPANY *vs.* MADELYN McAVINEY
ET AL.

MALTBIE, C. J., HINMAN, BANKS, AVERY and BROWN, Js.

Argued June 10th—decided July 30th, 1936.

*Charles Albom,* with whom, on the brief, was *Arthur Klein,* for the appellant (plaintiff).

*Ellsworth B. Foote,* with whom, on the brief, were *David E. FitzGerald* and *John Clark Fitzgerald,* for the appellees (defendants).

BROWN, J. The plaintiff sought to recover from the defendant husband and wife, a balance of $2100 due it for the construction of a fence about certain property owned by the wife. The husband, Walter, admitted liability, but the wife, Madelyn, denied it. The plaintiff claimed that the wife was liable upon two grounds, that the husband acted as her agent in contracting for the fence and that it went for the joint benefit of both under the statute. The trial court gave judgment against the husband but found that neither ground upon which the plaintiff claimed the wife to be liable was established and the plaintiff claims it erred in these conclusions.

The following facts material to these issues appear in the finding: The defendants are husband and wife residing together in the house occupied as their home at 85 Blake Road, Hamden. In 1930 the husband,

who up to that time had owned this property and also a tract of wooded land, vacant except for a barn or shed thereon, located about three blocks from the former property, conveyed both parcels for the consideration of love and affection to his wife, who has ever since been the owner of them. During 1933 and 1934 the husband had an account with a New Haven bank which stood in his wife's name, wherein he deposited his own funds, and from which pursuant to an arrangement with the bank and his wife, all checks drawn by him were paid. The bank sent monthly statements together with all canceled vouchers to the wife.

May 4th, 1933, the plaintiff's sales agent agreed with the husband at his office in New Haven for the construction of a fence around the tract of wooded land for $3954.85, subject to approval by the plaintiff's home office. A week or two later the plaintiff's representatives told the husband it was ready to do the work as agreed, but having ascertained that title of the land was in the wife, desired that he have her join in the contract. The husband stated that the original proposal was with him and that he would not involve his wife in the transaction. After communicating with the plaintiff's home office, its representatives told the husband that it would go on with the contract if he would agree to the terms of payment suggested by them, which he did. Thereafter the plaintiff enclosed the property with the fence which tended to improve its appearance.

July 19th, 1933, the husband sent the plaintiff a check for $1320.92 of Russell McKiernan payable to his order which he indorsed over to it, on account of the $3954.85 invoice he had received from it, together with his note for the balance of $2633.93. Thereafter up to January, 1934, the husband paid the plaintiff at

different times a further total of $480.93 by five checks signed by him drawn on the account above mentioned and paid by the bank therefrom. When each check was given he gave the plaintiff a renewal note for the balance, the last of these being the $2100 note sued upon in the second count. In April, 1934, the husband advised the plaintiff that he was unable to make further payments upon this note and none have been made.

The account for the construction of this fence was charged on the plaintiff's books against the husband only, and the bill of lading therefor was directed to him at his Blake Road address. At no time during the entire negotiations relative to the purchase of the fence was the wife present, nor did she take any part in the same whatsoever. Taxes on the list of 1932 assessed against the property upon which the fence was constructed were paid by the husband, but no taxes have been paid on the property since. Sworn returns for the property were made by the husband at the Hamden assessors' office and signed by him as agent for his wife. The husband performed no act in connection with the property other than already stated.

The burden of proving agency was on the plaintiff. The marital relation per se bestowed no authority upon the husband to act as agent for the wife or to enter into a binding contract for her without her consent. 13 R. C. L. 1168, § 194. And credit having been given to the husband alone, it afforded no ground for a presumption that he was her agent. *Shelton* v. *Pendleton,* 18 Conn. 417, 422. It was but one circumstance to be considered bearing upon this issue. *Brown* v. *Woodward,* 75 Conn. 254, 259, 53 Atl. 112. The fact of a special agency did not tend to prove a general agency, nor did the existence of an agency

for one purpose tend to establish the existence of one for another and entirely different purpose. *Chesebro* v. *Lockwood*, 88 Conn. 219, 223, 91 Atl. 188; *Siller* v. *Philip*, 107 Conn. 612, 621, 141 Atl. 872. And notwithstanding the fact that all the consideration of the debt became an accession to the wife's separate estate, this burden of proof as to agency rested upon the plaintiff. *Smith* v. *Marbut-Williams Lumber Co.*, 37 Ga. App. 239, 139 S. E. 590, 591. While the record discloses no basis for a claim of agency predicated upon either authority by estoppel, express authority, or express ratification, the plaintiff contends that upon the facts found the court either should have inferred that an agency existed at the time the contract was made with it by the husband, or concluded that the wife's subsequent conduct constituted an effective ratification thereof.

Even though it were so that notwithstanding the principles above recited relating to the plaintiff's burden of proof in such a case, the facts of the wife's ownership of the fee, the existence of the marriage relationship, the manner in which the husband's bank account was conducted in his wife's name, his payment of the tax due on the 1932 list, and his sworn tax returns of the land for her "as agent" might be sufficient to warrant an inference by the court that he was acting as her agent in contracting for this fence, it certainly cannot be said as a matter of law that the court was bound so to conclude. And this becomes the more manifest in view of the absence from and entire lack of participation by the wife in any of the negotiations, the plaintiff's original proposal made to the husband individually, his express refusal to have her joined in the obligation, the bill of lading and invoices issued in his name and payments thereon made by him from his own funds, his

own notes given for the unpaid balances, and the fact that nothing else was done by him as to this land except the above mentioned tax payment and tax returns made. The court's conclusion that the plaintiff failed to prove the husband was the wife's agent at the time he entered into this contract with it, was fully warranted upon the subordinate facts found.

Nor did the court err in concluding that no agency relationship arose by ratification. In the first place, the husband at no time assumed to be acting on behalf of his wife in making the contract, as is essential to effective subsequent ratification. *Ansonia* v. *Cooper,* 64 Conn. 536, 544, 30 Atl. 760; *Matulis* v. *Gans,* 107 Conn. 562, 567, 141 Atl. 870; *Drazen Lumber Co.* v. *Jente,* 113 Conn. 344, 349, 155 Atl. 505; *Steward* v. *Church,* 108 Me. 83, 79 Atl. 11; Amer. Law Institute Restatement, Agency, Vol. 1, p. 204, § 85 (1); 30 C. J. 620, § 170. On the contrary, he in effect expressly denied that he was acting upon behalf of his wife. Furthermore, the finding fails to disclose that the payments to the plaintiff made by the husband by check on his bank account carried in his wife's name either constituted payments by her, or if they did, were made with such knowledge upon her part as to charge her with ratification by part payment, as contended in the plaintiff's brief. "The acceptance of the results of the act with an intent to ratify, and with full knowledge of all the material circumstances, is a ratification." *Ansonia* v. *Cooper,* supra, p. 544. Not only can no such acceptance be deduced from the facts found, but they are consistent rather with a gift of the fence by the husband to his wife, acquiesced in by her with no knowledge which could charge her with liability.

With regard to the remaining question of the wife's liability under the statute, § 5155, in so far as here

applicable, provides: "All purchases made by either husband or wife in his or her name, in case of marriages on or after April 20, 1877, shall be presumed in the absence of notice to the contrary to be on his or her private account and liability; . . . and both shall also be liable when any article purchased by either shall have in fact gone . . . for the joint benefit of both. . . ." Title to this land is in the defendant wife alone. It is no part of the houselot where the defendants live, but is three blocks removed therefrom. The plaintiff's claim is, however, that since the fence improved the property, which had formerly belonged to the husband and was conveyed by him to his wife without consideration, it had in fact gone for the joint benefit of both, within the terms of the statute. This proposition on its face is extremely tenuous, no authority is cited in support of it, and to approve it would extend the effect of the statute beyond its fair scope under our decisions. "Benefit" as used in the statute means "advantage; gain; profit; . . . whatever promotes prosperity and personal happiness; . . . good." *Ferrigino* v. *Keasbey,* 93 Conn. 445, 450, 106 Atl. 445. We have held that grain purchased and fed to horses of a husband engaged for a livelihood in the teaming business, from the income of which he supported his wife, did not render the wife jointly liable therefor as having gone for her joint benefit under the statute. *Dubow* v. *Gottinello,* 111 Conn. 306, 149 Atl. 768. It appears from the finding that the husband was making no use of the property and the only object in erecting the fence which the record suggests was the improvement of its appearance. The only tangible benefit to the wife which could result would be contingent upon some possible use of the land in the future from which she would derive an advantage or the equally indefinite possi-

bility of her selling it. There does not appear to be that direct relationship between the erection of the fence and a benefit to the collective unit, the family, upon which liability under the statute depends. *Dubow* v. *Gottinello,* supra, p. 312. Nor is there merit to the plaintiff's further claim that by virtue of the husband's conveyance of the land to his wife in 1930 in consideration of love and affection only, he has some equitable interest in it and therefore the purchase of the fence inured to the benefit of both. No such equitable interest was pleaded, none has been found by the court, and there is no evidence in the record which could support a finding that it existed. The court did not err in concluding that there was no such joint benefit of both under the statute as to render the wife liable.

The finding falls far short of showing a common enterprise in which the husband and wife joined such as existed in *Bergen* v. *Kelly,* 115 Conn. 292, 161 Atl. 337, relied upon by the plaintiff. And the force of the suggestion in its brief that the whole transaction by the defendants was a crafty scheme to deprive the plaintiff of its money for the unjust enrichment of themselves, even if warranted by the record, is appreciably mitigated by the fact that the plaintiff deliberately elected to extend credit to the husband alone in consideration of his promise of accelerated payments, after it had learned that the wife was the sole owner of the land.

There is no error.

In this opinion the other judges concurred.