This is an action to recover a broker's commission of the defendants, who are husband and wife. The defendants by their answer admit that on September 16, 1946, they jointly owned the real estate in question and that on or about September 25, 1946, they entered into a binding contract to sell it to one Ledoux for $7500. The question presented is whether the plaintiffs, who are engaged in the real estate business in Manchester under the name of W. E. Goodchild Company, *Page 249 
are entitled to a commission from either or both defendants. One of two special defenses interposed by the defendants enters into the adjudication of the question stated.
It has been made to appear that in mid-September 1946, the defendant husband signed a paper (exhibit A) styled "Uniform Contract," which recites the following matters of present moment: "We, Wilbert J. and Beatrice C. Emigh . . . hereby appoint W. Goodchild, Jr. [one of the plaintiffs] . . . as our sole and exclusive agents to make sale of the property described on the reverse side of this contract, upon the terms there stated (minimum gross selling price $7900), and do agree when said property shall have been sold or a customer procured able, ready and willing to purchase said property . . . to pay to said W. Goodchild five per cent commission . . . This contract shall continue in force for the period of 3 weeks from date."
The plaintiffs do not claim that Ledoux, with whom the defendants entered into an agreement to sell on or about September 25, 1946, was a customer procured by them or by another agent. It is their claim, as more fully appears in paragraph 2 of the complaint, that the agreement of the defendants was that any sale of the property during the period of three weeks following September 16, 1946, or the procuring of a purchaser by the defendants themselves during this period, which is what actually occurred, entitled them to a commission. The wording of exhibit A — "do agree when said property shall have been sold or a customer procured" — seems to sanction the claimed construction on this point. The words "customer" and "purchaser" are frequently used interchangeably in the real estate world and pose no practical problem. Hence the general rule of law pertaining to an exclusive agency contract is not applicable. That rule is stated thus in Harris v. McPherson, 97 Conn. 164,167: "A contract employing a broker as an exclusive agent, is an agreement on the part of the owner that during the life of the contract he will not sell the property to a purchaser procured through another agent. This does not preclude the owner from selling to a purchaser of his procuring."
It has been noted that while exhibit A employs the pronoun "We" it was signed only by the defendant husband. "The marital relation per se bestowed no authority upon the husband to act as agent for the wife or to enter into a binding contract for her without her consent." Cyclone Fence Co. v. McAviney,121 Conn. 656, 659. Plaintiffs' counsel at the conclusion of the *Page 250 
evidence conceded that no case was made out against the defendant wife.
The inquiry then is limited to a consideration of the liability of the defendant husband. That a husband may be held to specifically perform in part or for damages, in a situation somewhat comparable to the one at bar, has been recognized in the recent case of Schneidau v. Manley, 131 Conn. 285.
In its consideration of the first special defense, the court finds that a condition precedent attached to exhibit A, namely, that the signature of the wife be first obtained to the writing before it would become effective. The evidence warrants two subordinate findings of fact deemed significant: (1) There had been an earlier contract of exclusive agency signed by both the wife and husband in favor of the plaintiffs relative to the sale of this property which had terminated on September 14, 1946, just before or on the date the writing in question was executed (2) The use of the pronoun "We" was used to embrace the wife's subsequent signature which was never obtained. "A condition precedent is one which must be performed before the agreement of the parties becomes a valid and binding contract . . . Whether a condition is precedent, depends upon the intent of the parties, and this is gathered from the context, read under the rules governing the interpretation and construction of writings." McIsaac
v. Hale, 104 Conn. 374, 379.
Another finding of the court on this phase which is decisive in any event is that the plaintiff Goodchild, Jr., had agreed with the defendant husband to secure the signature of the wife, which he never attempted to do. Hence the fact that the plaintiffs commenced to look about for prospective purchasers after the husband signed the writing is of no consequence.
Exhibit A purports to be dated September 16, 1946. The defendant husband testified that he signed his name thereto on Saturday the 14th and that no date appeared thereon when he affixed his signature. It does not become necessary to determine the exact date of signature in view of the findings herein recited, which control the decision from either standpoint. This aspect is touched upon only to indicate to counsel that the court has not overlooked their respective claims and to explain the reference to "mid-September, 1946," employed in the second paragraph of this memorandum.
 The issues are found for the defendants. Judgment may so enter with an award of costs to the defendants as an incident.