PETER GRILLO *v.* DOUGLAS HOWE ET AL.

APPELLATE DIVISION OF THE CIRCUIT COURT

FILE No. CV 14-657-17392

Argued June 12—decided September 15, 1967

*Harry Cooper* and *George Schwolsky,* of Hartford, for the appellants (defendants).

*Francis J. McVane,* of Hartford, for the appellee (plaintiff).

KOSICKI, J. The plaintiff, a real estate broker, brought suit against the defendants, claiming that he had been engaged to sell certain real estate, jointly owned by them, and had produced a customer ready, willing and able to purchase the property on terms fixed by the defendants, and that he was entitled to an adjusted commission of $2500 on the gross sales price of $72,500. The court rendered judgment for the plaintiff, from which the defendants appealed.

The finding, with such corrections as are warranted, shows the following facts: On or about January 7, 1965, the plaintiff was a real estate broker licensed by the state of Connecticut. At and before that time, the defendants Douglas and M. Flossie Howe, husband and wife, were joint owners of certain real property consisting of two four-family apartments and garages situated at 150–152 and 154–156 Preston Street in Hartford. On that date, Mrs. Howe signed, and also affixed the signature of the defendant Douglas to, an exclusive right to the plaintiff to sell both properties within 120 days for $70,000 net to the owners. Mrs. Howe, at the time she signed the exclusive right to sell, represented that she had a power of attorney and the authority to sign for her husband. No such power of attorney existed and no evidence of such agency was produced by the plaintiff. The defendant Douglas Howe did not testify.

The plaintiff had some prior negotiations for the sale of the property with Mrs. Howe but they did not materialize. At those times, she acted in her husband's behalf. At the time of the present negotiations, which took place in the living room, on Jan-

uary 1, the defendant Douglas was not present although he was in the house either in the kitchen or the basement. The plaintiff at no time discussed with Douglas either the matter of agency or the sale, nor did he ask for Douglas' signature. Douglas had nothing to do with listing the properties for sale, and Mrs. Howe had no authority from her husband to sign the agency agreement.

On March 15, 1967, Joseph Macri, claimed by the plaintiff to be the prospective purchaser ready, willing and able to buy, signed an "agreement to buy." Neither of the defendants executed the agreement, and both refused to do so. Macri had given the plaintiff a deposit of $1000 on the purchase price. Neither the agreement nor the deposit was shown or transmitted to the defendants. The purchase offer was for $72,500 conditioned on obtaining a first mortgage for twenty-five years for $57,500, at not more than 6 percent interest, and cash of $14,000 on transfer of title. A further condition was that if the mortgage could not be obtained on those terms the deposit would be returned.

The buyer named in the complaint is Joseph Macri. He had an undisclosed brother-in-law who was to be a partner and copurchaser of the properties with him. They were willing to purchase only on condition that they could obtain a mortgage as described above. No application for such a mortgage had been made or a bank commitment received. No title search was made. The purchase offer called for a conveyance by warranty deed. At or about that time, Mrs. Howe for the first time informed the plaintiff that the property was involved in a boundary dispute and that the purchaser would have to take conveyance subject to the pending litigation in the Superior Court. The sale of the property was not consummated.

Of the various claimed errors assigned on appeal, there are only two which we need to consider; in our opinion, they are dispositive of this appeal. The first question is whether, under the circumstances recited above, the broker had a valid agency agreement to sell the properties of the defendants. It was the plaintiff's burden, derived from the allegations of his complaint, to prove by a preponderance of evidence that he had the authority to sell the properties owned by the defendants jointly. He had no such authority from Douglas, who, according to the only evidence on the issue, was opposed to the sale and was angry with his wife for attempting to dispose of the property. The only basis on which the court concluded that the wife was acting for her husband, in all the dealings pertaining to the aborted sale, was inferential. "The burden of proving agency was on the plaintiff. The marital relation per se bestowed no authority upon the . . . [wife] to act as agent for the . . . [husband] or to enter into a binding contract for . . . [him] without . . . [his] consent." *Cyclone Fence Co* v. *McAviney*, 121 Conn. 656, 659; *Iodice* v. *Rusnak*, 143 Conn. 244, 246, 247. There was no evidence that Douglas ever agreed to sell, or authorized his wife to do so, or ratified her actions. See *Pentino* v. *Gallo*, 98 Conn. 97. And there can be drawn no inference of implied authority from the vague and nebulous testimony that Mrs. Howe had acted for her husband before in business matters because he did not "write much." "Apparent and ostensible authority is such authority as a principal intentionally, or by want of ordinary care, causes or allows a third person to believe that the agent possesses. . . . It is essential to the application of the above general rule that two important facts be clearly established: (1) that the principal held the agent out to the public as possessing sufficient authority to embrace the particu-

lar act in question, or knowingly permitted him to act as having such authority; and (2) that the person dealing with the agent knew of the facts and acting in good faith had reason to believe and did believe that the agent possessed the necessary authority." *Quint* v. *O'Connell,* 89 Conn. 353, 357. The plaintiff, as a real estate broker, was subject to the rules and regulations of the state insurance department, of which our courts may take judicial notice. *Roden* v. *Connecticut Co.,* 113 Conn. 408, 416. These require, among other things, that a listing agreement shall have affixed thereto the signatures of all the parties concerned. Conn. Dept. Regs. § 20-328-1. There was error in the court's finding that Mrs. Howe was authorized to act as agent for Douglas.

The trial court also erred in concluding that the failure of the defendants to produce Douglas as a witness, after the plaintiff had made out a prima facie case, permitted the inference that his testimony would have been favorable to the plaintiff. "When defendant introduces no evidence but submits his case in reliance upon the insufficiencies of the plaintiff's evidence, no unfavorable inference arises from his failure to produce evidence peculiarly within his knowledge. . . ." *Middletown Trust Co.* v. *Bregman,* 118 Conn. 651, 658; Holden & Daly, Conn. Evidence § 65c, p. 190. Moreover, Douglas was equally available to the plaintiff and could have been compelled to testify and have been examined to the same extent as an adverse witness. General Statutes § 52-178.

The remaining assignment of error which we need to examine is whether the court correctly concluded that the plaintiff had produced a buyer ready, willing and able to purchase the property of the defendants on terms satisfactory to them, and was, therefore, entitled to his commission of $2500. From

what we have said above, it can be seen without extended discussion that, since Douglas is not liable on this complaint, no liability can attach in this action as against Mrs. Howe. In the first place, a joint tenant or tenant in common cannot dispossess other unwilling joint owners or tenants in common except by partition or partition by sale. General Statutes §§ 52-495, 52-500; see *Klaus* v. *Klaus,* 143 Conn. 218, 221. The plaintiff has instituted this action on the ground that both joint owners were liable for the commission, and we cannot alter the complaint.

The second crucial question, as briefed and argued by the parties, was whether the plaintiff produced a customer who was ready, willing and able to carry out the terms of the alleged contract of sale. In the instant case, neither defendant had executed the purported contract. It has been held that even where a contract has been executed by the parties, a broker may not recover a commission unless he also proves the customer's ability to carry out the terms of the contract. *Lesser* v. *Altnacraig Convalescent Home, Inc.,* 144 Conn. 488, 491.

A broker, admittedly, is entitled to his commission when he has procured a customer ready, able, and willing to purchase upon terms prescribed or accepted by the seller. *Martino* v. *Palladino,* 143 Conn. 547, 548. What constitutes the buyer's readiness and ability to buy on the seller's terms is one of fact; and "[w]here corrections in a finding destroy the essential basis of the trial court's decision, a new trial is properly ordered." *Thomas F. Rogers, Inc.* v. *Hochberg,* 143 Conn. 22, 25. Where, however, as appears in this case, the plaintiff has not proved that the conditions precedent to a sale had been met, there is no issue to be remanded for a new trial. From the recital of the facts, as contained in the finding and the allowable corrections,

the only reasonable conclusion which can be reached is that the prospective purchaser was not, at the time negotiations were broken off, in a position to pay for the property. No mortgage had been arranged for, and he also intended to obtain a copurchaser—a new condition not included in the original proposal and "agreement to buy" executed by him but not by the defendants. There is no evidence of the fulfilment of the condition precedent contained in the proffered contract of the buyer nor of the acceptance by the owners of any modification of the agreement as suggested by Macri. See *Menard* v. *Coronet Motel, Inc.,* 152 Conn. 710, 711.

There is error, the judgment is set aside and the case is remanded with direction to render judgment for the defendants.

In this opinion DEARINGTON and MACDONALD, Js., concurred.