[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiffs, Monroe Meyerson, Centrig Industries, Inc., Centrig Industrial Contracting Corp., Industrial Services, Inc., Riggers Equipment Rentals, Inc., Vanderbilt Contracting Corp. and Vanderbilt Industrial Contracting Corp., have moved to confirm what they characterize as an arbitration award concerning post-reorganization disputes between them and the defendants, Sidney Milgrim ("Sidney"), Selma Milgrim ("Selma"), Centre Industries, Corp., Central Rigging Contracting Corp., Central Roadway Carriers Corp., CRC, Ltd., Rhode Island Motors, and the Tracy Smith Company.
The defendants deny that the document at issue is an arbitration award and have, by counterclaim, sought a declaratory judgment to the effect that the document is not such an award.
The court finds that before July 7, 1988, Meyerson, his sister Selma and her husband Sidney were the shareholders in a business begun by Meyerson and Selma's father. As of July 7, 1988, Meyerson owned fifty percent of the business, Selma owned twenty-five percent and Sidney owned twenty-five percent. After a period of disagreement, they entered into a reorganization and separation of their business interests in the form of a lengthy, detailed written agreement, dated July 7, 1988 (Exhibit A), to which the parties were as follows: Monroe Meyerson, Sidney Milgrim, Selma Milgrim, and various corporations in which they had interests: Centre Industries, Corp., Central Rigging Contracting Corp., Central Roadway Carriers Corp., Central Rigging Contracting Corp., CRC, Ltd., Rhode Island Motors and Tracy Smith Company.
That agreement included, at paragraph 13.02, a provision for arbitration which provided as follows:
 13.02 Dispute Resolutions. Any dispute among any one or more members of the Centrig Group [the plaintiffs herein] and any one or more of the members of the CRACC Group [the defendants herein] concerning the appropriate implementation of this Agreement and/or of any closing document shall, at the written request of any party, be resolved by Arthur S. Sachs, as sole arbitrator, who shall conduct his arbitration proceeding pursuant to the rules of the American Arbitration Association then obtaining, and whose decision shall be final and CT Page 5694 binding on all parties. . . .
Disagreements concerning matters covered by the July 7, 1988 agreement arose, and in an effort to resolve those differences, Sidney and Meyerson undertook negotiations which resulted in the creation of a document, Exhibit D, which is titled "Arbitration Award" and is dated October 25, 1989. That document was signed by Attorney Arthur Sachs, who had been designated in Exhibit A as the person to arbitrate any disputes within the scope of paragraph 13.02 of the reorganization agreement.
The court finds that no actual adjudicatory arbitration proceeding ever actually took place, but that the parties who took part in the negotiations that led to the creation of Exhibit D hoped to achieve an easily enforceable accord by agreeing to waive the procedural processes set forth in paragraph 13.02 and by further agreeing at pages 1-2 of Exhibit D, to treat the substantive context of Exhibit D as "final and binding upon all of the persons and entities constituting the CRACC Group and/or the Centrig Group and that judgment upon this arbitration award may be made in the Superior Court of the State of Connecticut at the request of any party hereto."
The parties have raised issues concerning the validity of Exhibit D as an arbitration award, its enforceability, its scope, and other matters. Central to the entire dispute, however, is the issue as to whether Selma Milgrim agreed, either by herself or by any agent, to the terms of Exhibit D, including the waiver of the arbitration provisions of paragraph 13.02 of the July 1988 agreement. Because of its impression that the other issues presented by the parties are either determined by or rendered moot by this issue, the court bifurcated the trial, first hearing evidence as to this issue. The parties having indicated that they have presented all the evidence they intend to present on that issue, it is ripe for adjudication.
As a twenty-five percent shareholder in the business that was restructured by way of the agreement designated Exhibit A, Selma Milgrim was a party to the reorganization agreement of July 1988 and signed the agreement on her own behalf. She thereby agreed, inter alia, to the provisions of paragraph 13.02 concerning the manner in which disputes concerning implementation were to be resolved, and she acquired the right to have disputes concerning her interests arbitrated in the manner described in paragraph 13.02.
By a letter dated June 8, 1989, Attorney Lawrence M. CT Page 5695 Liebman of New Haven wrote to Meyerson advising him that his clients requested such arbitration as to certain disputes that had arisen after the signing of the July 1988 agreement. Attorney Liebman stated in his letter that he represented both Sidney Milgrim and Selma Milgrim as of June 8, 1989, however he testified that this statement was inaccurate, as he had in fact been retained only by Sidney Milgrim and that he had no retainer agreement with Selma, had never met with her or communicated legal advice to her, never consulted her with regard to the negotiations that led to Exhibit D, and did not act as her attorney at any time after June 8, 1989. The court concludes that Attorney Liebman represented Sidney in the negotiations and merely expected, without any grounds for such a belief, that Selma would go along with whatever her husband decided to do in the negotiations.
Meyerson and his side of the controversy (referred to in Exhibit D as the "Centrig Group") were represented by a New York lawyer, Jeffrey Welsh. Welsh and Liebman conducted negotiations with the assistance of Arthur Sachs, who, at their request, prepared a draft of their agreement in the form of an arbitration award, Exhibit D. That document contains separate signature lines for Selma and for Sidney and Attorney Liebman. When Sachs sent a messenger to Florida to secure Selma's signature on the so-called arbitration award, she refused to sign and requested that the document be delivered to her attorney in Miami, Milton Wallace.
On either October 24 or October 25, 1989, Wallace talked to Sachs and suggested some redrafting of Exhibit D to add references to Selma's ownership interest, at page 3 of the document. Shortly thereafter, however, Wallace announced that Selma refused to agree to the terms of Exhibit D and would not provide the signature that would indicate a waiver of the procedural provisions of the arbitration clause.
Neither Sidney nor Liebman signed Exhibit D after Selma's refusal to do so.
The plaintiffs contend that despite Selma's refusal to sign Exhibit D, she had agreed to its provisions either through Attorney Liebman or through her husband, Sidney. The issue is whether either Attorney Liebman or Sidney had authority to act as her agent to bind her to a waiver of the provisions of paragraph 13.02 of Exhibit A.
The Connecticut Supreme Court has identified the three elements required to show the existence of an agency relationship: "(1) a manifestation by the principal that the agent will act for him or her; (2) acceptance by the agent or CT Page 5696 the undertaking; and (3) an understanding between the parties that the principal will be in control of the undertaking." Hall v. Peacock Fixture Electric Co., 193 Conn. 290, 294
(1984); Beckenstein v. Potter Carrier, Inc., 191 Conn. 120
(1983); Botticello v. Stefanovicz, 177 Conn. 22, 25 (1979). The party alleging agency has the burden of proving it, L.C. Bates Co. v. Austin Nichols Co., 143 Conn. 392, 394
(1956); Cyclone Fence Co. McAviney, 121 Conn. 656, 659
(1936).
The plaintiffs contend that Attorney Liebman and Sidney had apparent authority to act on Selma's behalf and to bind her in the negotiations. Apparent authority is "that semblance of authority which a principal, through his own acts or inadvertences, causes or allows third persons to believe his agent possess." Norwalk v. Board of Labor Relations, 206 Conn. 449, 451 (1988).
Determination of apparent authority of an agent requires an examination of the acts of the principal rather than of the agent. Id.; Beckenstein, supra, 191 Conn. at 140.
Attorney Liebman had authority to waive rights belonging to Selma only if he was her legal counsel on the date of the alleged agreement to the terms of Exhibit D and if his actions on her behalf were within the scope of his authority. The evidence does not establish with exactitude the date on which the plaintiffs claim that oral agreement as to the contents of Exhibit D was reached between what that document identifies as the two groups represented in the negotiations. Whether or not Attorney Liebman had represented Selma as well as Sidney on or before June 8, 1989, the plaintiffs did not establish that Liebman represented her during the negotiations or on whatever date the agreement was allegedly reached, or that he had authority to waive her rights pursuant to paragraph 13.02 of Exhibit A.
Both Selma and Liebman deny the existence of an attorney-client relationship on or after June 8, 1989, and the plaintiff adduced no evidence sufficient to establish that an agency relationship in fact existed within the requirements of the elements of proof set forth above.
The plaintiffs presented no evidence that Selma ever held out Liebman as her agent or representative or that she asked him to represent to anyone that he was acting on her behalf. At most, the plaintiffs have shown that Selma did not participate in the negotiations, not that she held Liebman out as her agent. CT Page 5697
The court likewise does not find that Sidney Milgrim had authority to act for Selma in agreeing to the contents of Exhibit D. While the court does not find all of Selma's testimony to have been credible, Attorney Sachs testified that in the past she had upon occasion acted independently of Sidney with regard to business matters and had refused to participate in actions with which she disagreed. Sidney testified that she did not give him actual authority to negotiate on her behalf or waive her rights, and Selma testified that she gave him no such authority. The marital relationship per se bestows no authority upon a husband to act as agent for his wife or to enter into a binding contract for her without her consent. Cyclone Fence Co. v. McAviney,121 Conn. 656, 661 (1936).
While Selma was on one occasion asked by Sidney to go to a meeting at the office of Attorney Sachs, during the period when negotiations were in process, her testimony was uncontroverted that she left without any actual discussion. The plaintiffs have not presented evidence sufficient to establish that Selma had indicated in any way that Sidney had authority to act as her agent in the negotiations that led to Exhibit D. The inclusion of the separate signature line for Selma in Exhibit D suggests rather, that the parties to the negotiations realized that they would need the assent of Selma as a party to Exhibit A if the device of couching their settlement as an arbitration award was to be effective. If the Meyerson group and Sachs had believed that Sidney had authority to bind Selma to the terms of Exhibit D, Sachs would hardly have flown an assistant to Florida to obtain Selma's signature. The court finds credible Sidney's testimony that, at best, he hoped he would be able to persuade Selma to go along with the arrangements he had negotiated with her brother. At the time of the negotiations, moreover, Sidney or Liebman had made it known to Meyerson and his counsel that Sidney and Selma were experiencing marital difficulties, and such a circumstance would make it less likely that Sidney would have authority to represent her independent interests in financial dealings.
While the plaintiffs may have assumed at some time before October 24, 1989, that Attorney Liebman was acting as Selma's agent, their assumption was not shown to be the result of any actions by her or manifestation that either Liebman or Sidney was authorized to act as her agent. Her mere lack of participation does not manifest an intent that a participant be her agent.
The court finds that Selma Milgrim did not waive her right to full compliance with the provisions of paragraph CT Page 5698 13.02 and that the plaintiffs have not established that she did so through an agent with either actual or apparent authority to bind her. Since it is undisputed that several of the provisions of paragraph 13.02 were not complied with, notably that no arbitration hearing or adjudication ever took place, Exhibit D could not be found to be valid arbitration award and could not be confirmed by this court as determinative of the interests of Selma.
It appears to the court that all of the other issues raised by the parties are determined by the finding set forth above, however the court does not wish to foreclose the parties from offering any evidence as to any claim they believe would be unaffected by the court's determination on this issue.
The trial will be resumed on June 14, 1991 at 10:00 a.m. in Courtroom C of the Milford Courthouse for the presentation of any further evidence as to any remaining claims and/or for argument as to the application of the proof already presented to the claims set forth in the pleadings.
BEVERLY J. HODGSON Judge of the Superior Court