[No. 21076. Department Two. October 8, 1928.]

YAKIMA PLUMBING SUPPLY COMPANY, *Respondent,* v. METTA B. JOHNSON, *Appellant.*[1]

*McAulay & Freece,* for appellant.
*Joseph C. Cheney,* for respondent.

FULLERTON, C. J.—The respondent, Yakima Plumbing Supply Company, brought this action against the appellant, Metta B. Johnson, to recover upon an account for plumbers' supplies which it alleged in its complaint it had sold and delivered to the appellant and her husband. The appellant defended on the

[1]Reported in 270 Pac. 829.

ground that she was not personally liable for the supplies, alleging that the supplies were sold to her husband, Harry E. Johnson, while he was conducting a plumbing business; and while not disputing that the sale created a personal liability against her husband and a liability against the community composed of her husband and herself, denied that it created a personal liability on her part. There was a trial before the court sitting without a jury, which resulted in a judgment in favor of the respondent for the full amount demanded.

There is no substantial dispute as to the material facts. From sometime prior to the year 1922, until his death on January 28, 1926, Harry E. Johnson conducted a plumbing business in the city of Yakima. The respondent, during the same period of time and in the same city, was engaged in the business of selling plumbers' supplies. Beginning with the year 1922, Johnson bought practically all of the supplies he used in his business from the respondent. There was, however, nothing unusual in the dealings of the parties. As Johnson required supplies in his business, he would order them from the respondent. The respondent would deliver them as ordered and charge Johnson with the selling price on its books. From time to time, Johnson would make payments to the respondent, which would be credited against the purchases.

For some time prior to the latter part of June, 1925, the payments did not equal the amount of the purchases, and at that time Johnson was indebted to the respondent in excess of fifteen hundred dollars. The respondent seems then to have become uneasy about the state of the account, and demanded a property statement from Johnson. Such a statement was furnished under the date of June 29, 1925. The respond-

ent was not satisfied with the statement, and prepared a blank form of its own, which its president and manager took to the home of Johnson and wife, where the blanks in the statement were filled in, and the statement signed by the husband and wife. The statement bore date of June 29, 1925, although it was actually executed some few weeks later.

Between the date of the instrument and the day preceding the death of Johnson, the respondent sold supplies to him of the value of $7,127.75, and between the same dates Johnson paid on the account $4,165.95.

The appellant was appointed administratrix of her husband's estate. In due time thereafter, the property of the estate was set aside to the appellant, as the widow of Harry E. Johnson, in lieu of a homestead she was entitled to claim under the probate laws of the state. Subsequent thereto, the appellant turned over to the respondent certain unused supplies sold to her husband, turned over certain accounts due her husband, and paid to it certain sums in cash. Crediting the aggregate of the subsequent payments on the account as it stood on the death of Johnson, there remained due the respondent the sum of $2,147.35, and for this sum the judgment was entered.

There was a dispute in the evidence as to the purpose of the property statement. The respondent's president and manager testified that his company desired the statement in order to bind both the husband and wife personally to any obligation that might thereafter be incurred for the purchase of the supplies; that he so stated to them; and that he also stated that no further credit would be extended them unless the statement was signed by both of them. The appellant, who is the only other witness to the transaction, denied that any such statements were made to them by the president, and gave a version of the president's reason for

desiring the statement entirely different from that testified by him. There was evidence, also, that the appellant, subsequent to her husband's death, promised to pay the account, but this also the appellant denies.

In this state, it is well settled that the wife personally is not bound for the debts of her husband, whether incurred in the conduct of a business in his own right or in the conduct of a business on behalf of the community. The husband is personally liable in each instance because he contracted the debt, and the community property is liable in the latter instance because the debt is contracted in the conduct of a community business; but our cases are uniform in holding that the wife is not personally liable in either instance, unless she has, by an independent promise of some sort, made herself so personally liable. *McLean v. Burginger,* 100 Wash. 570, 171 Pac. 518, and the cases there cited.

The trial court, in rendering its decision, was not unaware of the rule as stated. On the contrary, it fully recognized the rule, but rested its judgment on the conclusion that the property statement was of itself a promise to pay for such supplies as the respondent should thereafter furnish the husband for use in the conduct of his business.

Since the trial court rested its judgment on the property statement, we quote it here at length:

STATEMENT AS A BASIS OF CREDIT MADE TO THE YAKIMA PLUMBING SUPPLY CO.

By Johnson Plumbing Company

State whether Corporation, Partnership or Single Ownership:
Single Ownership.
If Partnership, state names and addresses of partners:
None.
None.
If under Single Ownership state name and address of Owner:
Harry E. Johnson, 603 Pleasant Avenue, Yakima, Wash.

ASSETS:

| | |
|---|---|
| Real Estate and Bldg. ................................. | $6,700.00 |
| Machinery, Tools ..................................... | 200.00 |
| Fixtures .............................................. | 200.00 |
| Stock on hand ........................................ | 1,200.00 |
| Accounts Receivable less than 60 days old.............. | 1,200.00 |
| Accounts Receivable more than 60 days old.............. | |
| Cash on hand ........................................ | 125.00 |
| Cash in Bank ........................................ | 25.00 |
| Other Assets, Auto's ................................. | 650.00 |
| TOTAL ASSETS .....................................| $10,300.00 |

LIABILITIES:

| | |
|---|---|
| Accounts Payable ..................................... | $3,000.00 |
| Loans from Bank ...................................... | |
| Loans other sources .................................. | |
| Mortgages on real estate............................... | 4,300.00 |
| Other obligations .................................... | |
| Net Worth ........................................... | 3,000.00 |
| See additional as per insurance. | |
| TOTAL LIABILITIES ................................| $10,300.00 |

Is statement of value of stock on hand upon the basis of an inventory actually taken? Yes. If so, on what date? Jan. 1, 1925.

List Community Property not listed above:

Life Insurance, W. of W. $1,100.00.

Life Insurance, Metropolitan $3,000.00. Accident Xtra, $1,000.00.

Do you claim exemption on above? No.

List property of wife, or property held in her name:

None.

Do you claim exemption on above? No.

If any of the above accounts are pledged state the amount, $..............

Are there any existing liens on personal property? None.

If so, what;...................Amount $...................

INSURANCE: On merchandise, $1,000.00. On buildings, $3,800.00. On machinery, tools and fixtures, $500.00.

Date of signing this statement. June 29, 1925.

FIRM: Johnson Plumbing Co., By Harry E. Johnson.

If single ownership wife signs here. Metta B. Johnson.

The instrument, it will be at once observed, contains no direct promise on the part of the wife to answer personally for goods sold to her husband and used in the business he was conducting. On its face, it is a

mere statement of the property owned, and the value of the property owned, by the signatory parties thereto. By signing the instrument, the parties possibly guaranteed the truth of the statements it contained, and possibly rendered themselves liable, jointly and severally, if the statements were not true, for any damage the respondent suffered because of a reliance upon their truth, but it is impossible for us to conceive that the instrument is a promise on the part of the wife, either direct or implied, to pay for such supplies as her husband should thereafter purchase for use in the business he conducted.

Nor are we persuaded that it was the purpose of the parties or the intent of the instrument to create a liability for the supplies thereafter to be sold, different from that ordinarily imposed by the sale and purchase of the supplies. To so hold would be to give it an effect it does not bear on its face, and the extrinsic evidence is far from convincing that the signers of the instrument so considered it, whatever may have been the purpose of the other party. In other words, there was no meeting of minds upon such an agreement. Moreover, we think it against the probabilities. The wife then had no separate property or business, and all the interest she possessed in the community property of herself and her husband would be bound by the contract of her husband. There was thus no object in seeking to have her personally bound. The transaction was, moreover, an unusual one had this been its purpose. The parties conducting it were mature individuals, having more than the usual intelligence and business acumen. The usual and ordinary way of accomplishing the purpose is by a direct statement in language incapable of being misunderstood, and it is the more natural thought that, had the purpose been

that which is now contended for, the usual method would have been followed.

If the respondent is to recover at all, therefore, it must be on the theory that the recitals in the instrument were false, and that the respondent, believing them to be true, acted thereon to its injury. But we find nothing in the evidence which would justify such a conclusion.

The judgment is reversed, and the cause remanded with instruction to enter a judgment in favor of the appellant to the effect that the respondent take nothing by its action.

MAIN, ASKREN, HOLCOMB, and BEALS, JJ., concur.