[No. 31462. Department One. November 24, 1950.]

T. S. MICHAELSON, *Appellant,* v. STEPHEN D. HOPKINS *et al.,* *Respondents.*[1]

*Merle D. Cohn,* for appellant.

*Solie M. Ringold,* for respondents.

PER CURIAM—This is an action in which the plaintiff seeks to recover one thousand dollars from the defendants because of alleged false representations relative to the value of certain corporate stock. From a judgment of dismissal predicated on a finding hereinafter set forth in full, the plaintiff appeals.

Certain facts are undisputed. The plaintiff, T. S. Michaelson, while attending a stockholders' meeting of the Olympia Brewing Company in April, 1946, heard of the operations of the Jensvold Manufacturing Company, hereinafter called Jensvold, in which corporation the brewing company owned thirty thousand shares of stock. He became interested in acquiring some Jensvold stock, but was advised that all

[1] Reported in 224 P. (2d) 350.

of the three hundred thousand shares had been sold or subscribed and that there was none for sale. He left his name with the defendant, Stephen D. Hopkins, the treasurer of Jensvold, who promised to notify him if any stock became available.

The stock had a par value of one dollar a share; however, as of August, 1946, there had been no stock sales except to the original subscribers and there was no established market value in the ordinarily accepted sense of that term. The company had been operating at a loss; additional capital was required; and the book value of the assets of the corporation, as shown by a balance sheet of June 30, 1946, is conceded to have been less than one dollar a share.

In August, 1946, Hopkins was severing his connection with Jensvold and desired to sell his thousand shares of stock. He contacted Michaelson and ascertained that he was still interested in acquiring Jensvold stock. They met in Michaelson's place of business at Fort Lawton, August 15, 1946, and Michaelson paid two thousand dollars for Hopkins' stock. The parties give widely divergent accounts of what was said at that meeting.

*The Michaelson version*: Hopkins said he had a thousand shares of Jensvold stock that he wanted to sell because he was leaving the company and going into business for himself, and he asked two dollars a share for it. Michaelson asked him, " 'Is the value of the stock worth it?' " to which Hopkins replied, " 'Yes, it is worth more than two dollars a share.' " Hopkins also said that the company was in good financial condition. Although Michaelson knew the par value of the stock was one dollar a share, he believed Hopkins and bought the stock because Hopkins said the value was there and the company was in good shape.

*The Hopkins version*: We quote part of Hopkins' testimony:

" . . . However, one of the first things I did do was to tell Mr. Michaelson that I was severing my relationship as treasurer with the officers, with the Jensvold Manufacturing Company, and extended to him unfolded so he could

read it, a copy of my resignation effective August 31st. It is my recollection he took it in his hands, and glanced at it at that time. . . .

"He asked me how they were doing. I told him they were operating in the red. I said it was a new company and that was probably to be expected at this time. Also the fact that the raw material was in tight supply was a contributing factor. I said practically every sheet metal manufacturing company in the country was in the same position as far as getting raw material.

"He asked me what I thought of it. By that, I mean the company in the common stock. I told him I thought it was a business man's risk. . . . I asked him why he was interested in getting it. He said he was interested primarily because of the Schmidt management. . . . He said he thought very highly of them as he had been one of the early stockholders of the Olympia Brewing Company. . . .

"He asked me when it might possibly pay dividends. I told him it was, it was very difficult to say. The best guess I could give him would be a minimum a year, approximately a year and a half. . . . He asked me what it might be worth. I told him it was a very difficult question to answer as the company was not paying dividends or showing a profit at that time; but that I had two sets of figures which when combined together might help us arrive at a figure."

Hopkins further testified that the "two sets of figures" referred to were those contained in the balance sheet of June 30, 1946, which showed the stock to have a value of less than one dollar a share, and the valuations contained in the report of the General Appraisal Company of Seattle, dated March 15, 1946, which showed a much higher valuation of the plant site, buildings, machinery and equipment than that shown on the Jensvold books. Hopkins explained that if the replacement value, as shown by the report of the appraisal company, was substituted for the value as shown on the balance sheet of June 30, 1946, the stock would have a value of $2.64 a share; and if the depreciated value as shown in the appraisal company's report was used, the value of the stock would be $1.96 a share. Hopkins told Michaelson that he did not care to sell for less than two dollars a share and Michaelson agreed to take the stock at that price.

*The trial court's finding on disputed facts:*

"That on or about the 15th day of August, 1946 the defendant, STEPHEN D. HOPKINS sold to the plaintiff 1,000 shares of stock in the Jensvold Manufacturing Company, Inc., at $2.00 per share; *that the defendant* STEPHEN D. HOPKINS *made no false or fraudulent representation of any material fact upon which the plaintiff relied.*" (Italics ours.)

If the trial judge made the italicized finding because he accepted the Hopkins version of the August 15th meeting, we would have no hesitancy in affirming his dismissal of the case, as the evidence was in sharp dispute and the trial judge, having the witnesses before him, was in a better position than we are to evaluate the credibility of their testimony. On the other hand, if the trial judge believed Mr. Michaelson but concluded that the misrepresentation was not of a material fact, or that Mr. Michaelson did not or was not entitled to rely thereon, a question of some difficulty is presented to this court. The briefs seem to be written upon the assumption that the trial court had accepted the Michaelson version, but we decline to enter into the investigation of the question discussed in the briefs until findings of fact are made that indicate that it is necessary so to do.

█ The cause is remanded, with instructions to the trial court to make additional findings of fact as to what false representations were made, if any, together with such facts as the trial court may regard as material and relevant in establishing or negating the elements essential to recovery in such a case.

The parties will have fifteen days after any additional findings of fact are made by the trial court, to file copies of additional arguments or authorities in this court, serving a copy of the same upon the attorneys for the opposing party.