[No. 31541. Department One. March 30, 1951.]

ROBERT B. WOODING, *Respondent,* v. H. R. SAWYER *et al.,*
*Appellants.*[1]

[1]Reported in 229 P. (2d) 535.

*Elliott & Schneider* and *Rummens, Griffin & Short,* for appellants.

*Ferguson, Burdell & Armstrong,* for respondent.

HILL, J.—The major issue presented here is whether or not appellants Fred F. Ludwick, Jr., and H. R. Sawyer, hereinafter referred to as Ludwick and Sawyer, were induced to enter into a written lease as the result of fraudulent representations by the respondent, hereinafter referred to as Wooding.

Wooding apparently was the moving figure in the development of the Auburn airport on leased land in 1945. He and Earl D. McPherson were co-owners from May, 1946, until August 28, 1947, at which time they entered into an agreement by which Wooding sold all his interest in the airport to McPherson, who took complete control of the property on that date.

The principal value of an airport such as the one here involved lies in its use in connection with a flying school, and McPherson operated such a school under the name of Auburn Flying Service. At that time practically all students in such schools were war veterans, and the compensation for their instruction, based upon their flying time, came through the veterans administration.

Because of the unsatisfactory character of McPherson's operation of the airport and flying school, Wooding and McPherson entered into another agreement, August 1, 1948, whereby Wooding purchased all of McPherson's interest and as of that date took possession and assumed active management of the property.

Ludwick and Sawyer were then successfully conducting a similar operation at Puyallup, and Wooding soon contacted them in an endeavor to interest them in buying or

leasing the Auburn airport. They knew that the Auburn flying school had not been efficiently operated, that it was in trouble with the civil aeronautics authority, that its operation had been suspended for thirty days (May 2 to June 2, 1948) and that another suspension was pending. They knew also that two of the three planes used in the operation of the flying school at Auburn were down for repairs.

Wooding furnished Ludwick and Sawyer with a list of all students enrolled with the Auburn Flying Service (August 24 or 25, 1948). This list, exhibit No. 7 herein, included thirty-four names, the course for which each student was enrolled, his flying time up to and including August 23, 1948, and the date by which his training was to be completed; and from it Ludwick and Sawyer computed the amount of revenue that might be derived from the students listed if they completed their training. The amount they arrived at after making certain deductions, in accordance with their experience, for those who would not complete the course, was sufficiently large to induce them to lease the airport and its equipment, including three planes, for a period of one year beginning August 23, 1948, at five hundred dollars a month, with an option to buy. The lease was executed August 28, 1948.

Ludwick and Sawyer formed a corporation under the name of L & S Flying Service, Inc., and their agreement of October 6, 1948, with the veterans administration, was executed by the corporation. Their Auburn operations were conducted under the corporate name; however, the corporation never became liable on the lease, and the testimony was that the corporation never actually took over the operation of the Auburn airport and flying school.

Only eighteen of the students listed on exhibit No. 7 took any instruction after August 23rd, and only a comparatively few completed their training. The Auburn operation proved to be very unprofitable, and Ludwick and Sawyer paid no rent after November, 1948. April 9, 1949, Wooding caused to be served on them a statutory three-day notice to pay rent or quit the premises. Rem. Rev. Stat., § 812 (3)

[P.P.C. § 55-5]. The rent not being paid and possession not being surrendered, Wooding commenced simultaneously two actions against Ludwick and Sawyer, joining their wives as parties defendant. (Sawyer was unmarried; Mrs. Ludwick kept the books and records for both the Puyallup and the Auburn operations.)

One action was brought under the unlawful detainer statute, Rem. Rev. Stat., § 812 *et seq.*, to regain possession of the airport and for double rent for the period during which the property was unlawfully detained. Rem. Rev. Stat., § 827 [P.P.C. § 55-35]. The other action was for past-due rent and for payments to which Wooding claimed to be entitled under the terms of the written lease. Sawyer and the Ludwicks answered by a general denial in both actions and, in the action for past-due rent, interposed certain affirmative defenses and a cross-complaint alleging that the lease had been procured by fraud and that they had been damaged by reason of that fraud in the amount of $7,300.

The cases were consolidated for trial. Wooding was allowed to make a trial amendment setting up another cause of action for the return of certain articles or their value. These items were on the premises when Ludwick and Sawyer took possession under the lease and were missing when they surrendered possession of the premises to Wooding, and had not been returned to him.

After an extended trial, the trial court found, *inter alia*:

"That at the time the defendants [appellants] entered into the said lease the defendants knew the condition of the airport and flying school and went into the said lease with their eyes open and calculated the possibility of profit against the risk and decided that it was a good gamble and that they would have a good chance to re-interest the students although they might have to work hard to do so and the defendants were not induced to enter into the lease by false representations on the part of the plaintiff [respondent], nor did they rely upon representations of the plaintiff in entering into the said lease. . . .

"That the lease [list] which is in evidence as defendants' Exhibit 7 was not given to the defendants as a list purported

to be of 'active' students. That the defendants have not established by clear, cogent and convincing testimony that the plaintiff made fraudulent misrepresentations to them which induced these defendants to enter into the lease contract and upon which they relied to their detriment."

It necessarily follows, if the affirmative defense of fraud was not established, that Wooding is entitled to recover the rent and other amounts due under the lease, and also for the unlawful detention of the premises.

There seems to have been no defense of the claimed wrongful removal of the items of personal property enumerated in the trial amendment except an expressed willingness (in a letter dated June 21, 1949) to return some of them which was never translated into action, and the court found a value of $195 for the articles removed from the premises and retained by Ludwick and Sawyer, and made that amount a part of the judgment.

Sawyer and the Ludwicks have appealed.

The trial judge in his oral decision said—and we agree—that the case hinges upon exhibit No. 7, heretofore referred to. Appellants urge that, with three exceptions, the persons listed were supposed to be "active" students, i.e., students who were actively engaged in completing their training. As we have seen, the trial court found that exhibit No. 7 did not purport to be a list of "active" students, and the evidence does not preponderate against that finding. While the record is replete with statements by Ludwick and Sawyer as to what they assumed the list to mean, it is admitted that the request for the list was made by Sawyer, and the evidence as to what he actually asked of Wooding is very meager. Sawyer, in response to the question, "Did you request a list of the students from Mr. Wooding?" replied, "Well, yes, I was the one that originally requested the list of active students of Mr. Wooding's." Wooding's version of the request was as follows:

" . . . I talked to Mr.—I guess it was Mr. Sawyer or Mr. Ludwick, I don't remember which. They wanted a list of the students that were still enrolled and how much time they had left to fly."

█ Unless Wooding misrepresented the list as being "active" students, and unless Ludwick and Sawyer had a right to and did rely upon that representation, there was no basis for actionable fraud. See *Michaelson v. Hopkins,* 37 Wn. (2d) 453, 224 P. (2d) 350, and cases there cited.

█ As we indicated in the *Michaelson* case, the trier of the facts, with the witnesses before him, is in a better position than are we to determine issues that are dependent upon the veracity of witnesses. In the present case there are additional factors which seem to us to lead inevitably to the same conclusion as that expressed by the trial court in the findings we have quoted *supra.* We state herewith some of the more significant of the factors referred to.

(a) Ludwick and Sawyer knew the problems of airport and flying school operation. The parties were dealing at arm's length; there was no question of any confidential relationship.

(b) Ludwick and Sawyer knew that the Auburn airport and flying school had been inefficiently operated, and that it was in difficulty with the C. A. A. They were certainly on notice as to the importance of careful investigation.

(c) Ludwick and Sawyer knew that Wooding had but recently assumed the management of the Auburn airport and flying school. It was obvious that his opportunity to become acquainted with and to know the students personally was very limited.

(d) The records of the airport and flying school, including the records of all the students, were available to Ludwick and Sawyer for at least a week prior to the execution of the lease. It is not denied that one evening, before the lease was executed, Ludwick went to the airport and requested and obtained access to the airport office and records. There could have been no reason for his presence there other than a desire to examine the records.

Much is also made of the fact that Wooding told Ludwick and Sawyer that the July income had been $3,800, which was true, but did not tell them that the August revenue would be less than half that amount. Wooding was nego-

tiating with Ludwick and Sawyer from mid-August on, and the evidence indicates that they knew more than he did about the amount of flying from the Auburn field after the 22nd of August, as they were doing all or practically all of it after that date. They certainly should not have been greatly deceived about the August income.

While we agree with the trial court that fraud was not established by clear, cogent, and convincing evidence, and that the conversion was so established, there are two particulars in which we agree with the appellants and which call for modification of the judgment.

First, the doubling of the rent under the pleadings and under the statute (Rem. Rev. Stat., §§ 812 (3), 827) should not have been for the entire month of April. (Possession of the airport was surrendered to Wooding on or about May 1, 1948.) Wooding in his complaint prayed for double rent "for each day following the 9th day of April 1949 which the defendants [appellants] wrongfully withhold possession." When did Ludwick and Sawyer begin to "wrongfully withhold possession," in the language of the complaint, or become guilty of "unlawful detainer," in the language of the statute?

■ The applicable portion of the statute is Rem. Rev. Stat., § 812 (3), in which it is stated that a tenant of real property is guilty of unlawful detainer when he continues in possession after (1) a default in the payment of rent, (2) service on him of a notice in writing requiring in the alternative the payment of rent or the surrender of the detained premises, and (3) the notice has remained uncomplied with for a period of three days from the service thereof. Until the notice has been served and has remained uncomplied with for a period of three days after its service, the tenant, though in arrears in his rent, is rightfully in possession, but thereafter he is guilty of unlawful detainer.

It is our view that Ludwick and Sawyer, though some twenty-five hundred dollars in arrears in rent, did not become guilty of unlawful detainer until the demand for rent or possession served April 9, 1949, had "remained un-

complied with for the period of three days after service thereof." Clearly, from April 13th until the end of that month, when they surrendered possession, Ludwick and Sawyer wrongfully withheld possession of the airport.

█ It is not necessary to determine how much of the unpaid rent Wooding could have had doubled under the terms of Rem. Rev. Stat., § 827, which provides that the court shall,

" . . . if the alleged unlawful detainer be after default in the payment of rent, find the amount of any rent due, and the judgment shall be rendered against the defendant guilty of . . . unlawful detainer for twice the amount of damages thus assessed and of the rent, if any, found due . . . "

as we have frequently held that the prayer of the complaint is the limit of the amount that can be recovered in an unlawful detainer action. *Peterson v. Crockett,* 158 Wash. 631, 641, 291 Pac. 721, and cases there cited; *Golden v. Mount,* 32 Wn. (2d) 653, 673, 203 P. (2d) 667. Under the prayer of the complaint heretofore quoted, the rent could be doubled only from April 13th to April 30th, both inclusive. Wooding is therefore entitled to rent for the month of April in the amount of five hundred dollars and to an additional three hundred dollars, the amount necessary to double the rent for the last eighteen days. This would make a total of eight hundred dollars for April instead of the one thousand dollars allowed by the trial court. The judgment will therefore be reduced two hundred dollars.

█ Second, the judgment should not run against Mrs. Ludwick individually. The lease was signed by H. R. Sawyer and Fred F. Ludwick, Jr. Not having signed the lease, Mrs. Ludwick is not personally liable thereon unless she, by an independent promise, made herself personally liable. *Yakima Plumbing Supply Co. v. Johnson,* 149 Wash. 257, 270 Pac. 829. There is no evidence of such a promise; therefore she is not liable individually for the unlawful detainer. Nor do we find anything in the evidence that establishes her individual liability for the conversion of the articles for which a recovery was allowed.

The only case cited by Wooding to sustain the judgment against Mrs. Ludwick individually is *Lucci v. Lucci*, 2 Wn. (2d) 624, 99 P. (2d) 393. Mrs. Lucci had signed a note under circumstances which clearly indicated that she was acting not only for the community but as agent for her husband, and he was held to be individually liable on the note although he had not signed it. There is no evidence here that Mr. Ludwick, who it is conceded signed for and bound the community, was acting as agent for Mrs. Ludwick as an individual. Although she was the bookkeeper and performed some services in connection with the operation of the Auburn airport and flying school, the management and control were clearly vested in Ludwick and Sawyer.

The judgment is affirmed as reduced and modified. The appellants, particularly Mrs. Ludwick, have secured some substantial relief as a result of this appeal, although the respondent has prevailed on the major issue presented. Because more than ninety per cent of the briefs is devoted to the fraud issue, the respondent is entitled to recover that item of the costs, but other than that no costs will be allowed in this court to either party.

SCHWELLENBACH, C. J., BEALS, GRADY, and DONWORTH, JJ., concur.

---

May 8, 1951. Petition for rehearing denied.