[No. 38287. Department One. June 9, 1966.]

U. S. LUMBER COMPANY, *Respondent*, v. WILLIAM M. McDONALD *et al., Defendants,* JENNIE S. McDONALD, *Appellant.**

*Reported in 415 P.2d 77.

*J. Orville Humphries* and *Dellwo, Rudolf & Grant,* for appellant.

*Brigham & Brigham,* for respondent.

BARNETT, J.†—The original action from which this appeal arises was brought by plaintiff-respondent U. S. Lumber Company against various defendants, including (1) William M. McDonald in his separate capacity; (2) Jennie S. McDonald, William's wife, in her separate capacity; (3) the marital community of William M. and Jennie S. McDonald; and (4) the McDonald Lumber Company, owned and operated by the marital community of William and Jennie McDonald. The action was for the recovery of money allegedly loaned to the above-named defendants, the greater amount thereof being evidenced by promissory notes and secured by four chattel mortgages. In its complaint, plaintiff prayed for foreclosure of the four chattel mortgages and deficiency judgments against William, the marital community, and also against Jennie in her separate capacity.

During the pendency of this litigation William McDonald, in his separate capacity, and the McDonald marital community were discharged in a bankruptcy proceeding. A default judgment was entered against the corporation, the McDonald Lumber Company. The remaining defendants, nameless in this opinion, have either defaulted or have otherwise been eliminated from the lawsuit, leaving Jennie McDonald, in her separate capacity, as the only defendant whose rights are involved in this appeal.

The business of the McDonald Lumber Company and the marital community consisted of the operation of a sawmill which was managed, however, solely by the husband, William. Prior to 1962, the sawmill was located in Usk, Washington. William was desirous of relocating the business in Cusick, Washington, but needed financial assistance to do so. Sometime early in 1962, he approached the plaintiff, U. S. Lumber Company, which was engaged in the wholesale lum-

---

†Judge Barnett is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

ber business, and which was interested in obtaining the lumber produced by the McDonald sawmill.

The U. S. Lumber Company was represented by a Mr. Udes, its president, who lived and had an office in Omaha, Nebraska, and who only occasionally came out to this area. Plaintiff was also represented by Lawrence M. Nelson of Priest River, Idaho, its manager or mill representative in the Priest River area, and by Fred F. Kondo of Priest River, Idaho, a practicing attorney in Idaho, admitted to the bar for 15 years. Mr. Nelson had the responsibility of purchasing lumber and paying for it. Mr. Nelson and Mr. Kondo jointly made the decisions whether or not loans, including those to Mr. McDonald, would be made, subject to certain limitations from Mr. Udes. Mr. Kondo made the recommendations as to whether or not the security for any loans might be adequate.

Between May, 1962, and September, 1963, a series of loans were made by plaintiff to McDonald totaling $77,900. As of the date of trial some $30,600 of this debt remained outstanding; $23,500 of this latter amount was evidenced by several promissory notes which were secured by four chattel mortgages. The remaining sum was evidently loaned on an open account, and was unsecured. All of the notes and mortgages were executed by either William McDonald or "William McDonald d/b/a McDonald Sawmill." Jennie McDonald signed none of the notes or mortgage instruments. At some time in mid-1962, after the loans secured by the first two chattel mortgages had been made (and, according to the testimony of Mr. Nelson, after $1,500 had been advanced on the third mortgage, making a total of $7,500 advanced to that time), plaintiff requested and obtained from the McDonalds a financial statement entitled "William McDonald and Jennie S. McDonald. Financial Statement. April 30, 1962," which listed their assets and liabilities. Included on this list were several quarter sections of real property in South Dakota and Montana designated as "Wheat Land of Jennie S. McDonald", clearly indicating that such was her separate property.

The financial statement was not executed by either William or Jennie McDonald. After further loans had been made, plaintiff attempted through William McDonald to acquire Jennie's signature on a mortgage instrument, but such efforts met with her refusal. At no time during these transactions did the plaintiff, through its representatives, discuss with Jennie the loans or the financial statement.

The case was tried to the court. Basing its decision on the import of the financial statement, the trial court fastened a personal liability upon Jennie McDonald, separately, for any deficiency remaining after foreclosure of the chattel mortgages up to the amount loaned by plaintiff subsequent to plaintiff's acquisition of the financial statement. Announcing its decision in a memorandum opinion, the court said: "The decision is based primarily on the financial statement and is intended to make Jennie McDonald's separate property available to the plaintiff, not because of partnership liability, but because of the representations implicit in the financial statement."

The main thrust of defendant Jennie's assignments of error is that the evidence is insufficient to justify the trial court's conclusion that she was personally liable for any deficiency resulting from loans made subsequent to the acquisition of the financial statement by the plaintiff.

The court found that Jennie authorized the inclusion of her property in the financial statement. She vigorously contends that the evidence does not justify such a finding. The trial judge was in a better position than we are to weigh the testimony of the witnesses, and, hence, we shall accept his finding as a verity. However, we are constrained to disagree with the conclusion reached by the court.

 The representatives of the plaintiff knew that the wheat land listed on the financial statement was the separate property of the defendant. The defendant at no time told plaintiff that she would be responsible for the loans, nor did William McDonald inform the plaintiff that his wife would be responsible. The financial statement, on its face, is a mere listing of the property owned by William and Jennie McDonald, and nothing more. If the plaintiff relied

upon this naked statement as a promise by Jennie Mc-Donald to pay the loans made subsequent to its issuance, it had no right so to do. The statement that certain property is separate, under no other circumstances than are shown here, is notice to plaintiff that her personal liability is not involved.

 It was found on substantial evidence that the sawmill was operated as a community business. In this situation, a separate liability cannot be fastened upon Jennie, not having executed the notes or mortgage instruments, unless she made an independent promise to pay these debts. *Wooding v. Sawyer,* 38 Wn.2d 381, 229 P.2d 535 (1951); *Yakima Plumbing Supply Co. v. Johnson,* 149 Wash. 257, 270 Pac. 829 (1928). The evidence falls far short of establishing the independent promise which the law requires. Neither Jennie McDonald, nor William on her behalf, through the financial statement or otherwise, impliedly or expressly promised to pay the community obligations.

In the *Yakima Plumbing* case, *supra,* a supplier of a business operated by the marital community insisted that the husband and wife execute a financial statement before he would advance them further credit. The husband and wife signed the statement. After the husband's estate had been set aside to the wife following his death, the creditor sought a personal recovery against the surviving wife. The basis of his claim was the financial statement signed by the wife which, he argued, bound her personally. We disagreed, saying, at 260:

> In this state, it is well settled that the wife personally is not bound for the debts of her husband, whether incurred in the conduct of a business in his own right or in the conduct of a business on behalf of the community. The husband is personally liable in each instance because he contracted the debt, and the community property is liable in the latter instance because the debt is contracted in the conduct of a community business; but our cases are uniform in holding that the wife is not personally liable in either instance, unless she has, by an independent promise of some sort, made herself so personally liable.
> . . . . .

The instrument, it will be at once observed, contains no direct promise on the part of the wife to answer personally for goods sold to her husband and used in the business he was conducting. On its face, it is a mere statement of the property owned . . . by the signatory parties thereto. . . . [I]t is impossible for us to conceive that the instrument is a promise on the part of the wife, either direct or implied, to pay for such supplies as her husband should thereafter purchase for use in the business he conducted.

Plaintiff argues that the *Yakima Plumbing* case is not apposite, since no separate property of the wife was there involved, as we have here. We disagree. The principle involved is the same—there is no express or implied promise to pay by the wife. In the present case, the parties conducting the transaction on behalf of plaintiff were mature business men, Mr. Kondo an attorney. They knew that the wheat land listed was not a community asset. No promises were made nor were there any false representations. Plaintiff was not justified in interpreting the financial statement as a promise by Jennie McDonald to repay the loans.

Plaintiff further urges that Jennie should be held separately liable as a *partner* of her husband in the operation of the sawmill. This contention has two facets. Plaintiff asserts that the trial judge found a partnership to exist, and that he made an express finding to that effect. Behind this contention is the following sequence of events. In its first memorandum opinion the court said: "On the contrary the court finds that Mrs. McDonald willingly and knowingly put money into the community business *as a partner* and knowingly allowed her separate property to be shown on the financial statement as an available asset of William and Jennie McDonald." (Italics ours.)

After the presentment of findings of fact and conclusions of law embodying the partnership relationship, the court wrote a second memorandum opinion in which it stated:

In the first memorandum opinion the court described Jennie McDonald's participation in the community business as that of a partner. This was inadvertent and the usage was not meant in the legal sense. *Though there was some evidence indicating a partnership, it was inconclu-*

*sive and will not support a finding to that effect.* (Italics ours.)

Deletions of references to "partnership" were made in two separate places in the conclusions of law, from the judgment and from paragraph No. 4 of the findings of fact. However, the court failed to delete a reference to the partnership from finding of fact No. 10. In the light of the court's memorandum opinion, this was patently a clerical error.[1] Plaintiff relies heavily upon the cases from this court holding that, when a memorandum decision is at variance with the findings of fact, the findings and not the memorandum opinion are controlling, citing *Lieberman v. Atlantic Mut. Ins. Co.,* 62 Wn.2d 922, 385 P.2d 53 (1963); *Rutter v. Rutter,* 59 Wn.2d 781, 370 P.2d 862 (1962), and other cases. We have no quarrel with the rule laid down in those cases. However, in the present case it is apparent from a reading of the court's findings and conclusions and the deletions therefrom, that they are patently inconsistent and ambiguous. In such a situation we can look to the trial judge's memorandum opinion for clarification. *Ershig Sheet Metal, Inc. v. General Ins. Co. of America,* 62 Wn.2d 402, 383 P.2d 291 (1963). We said in *Kinnear v. Graham,* 133 Wash. 132, 133, 233 Pac. 304 (1925):

> The purpose of findings is to enable this court to review the questions upon appeal, and when it clearly appears what questions were decided by the trial court, and the manner in which they were decided, we think that the requirements have been fully met.

In the light of the trial court's second memorandum opin-

---

[1] We call the attention of counsel and other members of the bar to Rule of Pleading, Practice and Procedure 60, RCW vol. 0, which provides: "Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party and after such notice, if any, as the court orders. During the pendency of an appeal, such mistakes may be so corrected before the appeal is docketed in the appellate court, and thereafter while the appeal is pending may be so corrected with leave of the appellate court." Had counsel alertly utilized this rule in the instant case, we would not now be confronted with this problem.

ion, there is little doubt that its clear intention was *not* to find the existence of a partnership.

The second facet of plaintiff's argument is that, under the evidence, it was the court's duty to find that a partnership relationship existed. We have carefully read the record and agree with the trial court that the evidence does not establish a partnership.[2]

Judgment reversed.

ROSELLINI, C. J., HILL, OTT, and HALE, JJ., concur.

*Reported in 415 P.2d 503.

---

[2]In view of this finding, it is not necessary for us to determine the significance of *Board of Trade of Seattle v. Hayden,* 4 Wash. 263, 30 Pac. 87 (1892), cited to the court in oral argument.