[No. 23743-8-I. Division One. August 8, 1990.]

CRAIG N. SMITH, *Appellant,* v. ROBERT E. DALTON, *Defendant,* SYLVIA DALTON, *Respondent.*

*Larry Lehmbecker,* for appellant.

*Christopher J. Fox* and *Fox Law Office,* for respondent.

SWANSON, J.—Appellant Craig N. Smith loaned Robert and Sylvia Dalton, husband and wife,[1] $20,000 to buy a

---

[1] Robert Dalton is a nominal party, having conceded liability below; he is not participating in this appeal. At the time of trial, Sylvia and Robert were separated and involved in a dissolution proceeding.

boat. One month after purchasing the boat, the Daltons separated. No payments were ever made on the loan. Following a bench trial, the trial court entered a judgment in favor of Smith against Robert Dalton individually and against the Daltons' marital community, but declined to impose separate liability against Sylvia Dalton. From the latter determination, Smith now appeals.

Robert Dalton testified that he and appellant Smith have been good friends for several years. Dalton is a contractor who has done a substantial amount of work for Smith. At the time of the transaction at issue, Sylvia Dalton and Smith were not friends.

According to Robert, he and Sylvia had discussed purchasing a boat for some time and planned to finance part of the purchase price with stocks owned by Sylvia. Shortly after returning from a trip to Lake Shasta in July 1987, Robert found a suitable ski boat on a dealer's lot. Robert and Sylvia visited the dealer and "picked out" the boat. Robert then approached Smith for a loan "on an interim basis" to purchase the boat. Robert intended to pay back Smith with the proceeds from the sale of Sylvia's stock and a bank loan. Smith had provided similar short–term financing to the Daltons the previous year for the purchase of a motor home.

Robert and Smith went to the dealer on July 30, 1987, where Smith wrote a personal check to the dealer for $19,422. Later that same day, Robert signed a promissory note. The note, dated July 30, 1987, is not a form document and apparently was prepared by Smith's wife. The note does not refer to Sylvia and contains a space for Robert's signature only. Although Robert also signed a security agreement, Smith never attempted to perfect a security interest in the boat. Robert did not discuss the terms of the promissory note with Sylvia. Title to the boat was placed in Robert's name only. According to Robert, he and Sylvia removed her stocks from a safe deposit box shortly after the purchase of the boat in preparation to sell them.

Several days after the purchase, the Dalton family took the boat for a 4–day trip to Lake Chelan. The family also made several additional outings in the boat during August 1987. On about August 27, 1987, the Daltons separated, and Robert moved out of the house, taking the motor home. Robert parked the motor home at Smith's residence, where he lived continuously until the time of trial. Robert was provided with keys to Smith's residence and vacation house and was permitted to use Smith's vehicles.

Shortly after the separation, Sylvia prevented an attempt by Robert and Smith to take possession of the boat. She retained the boat until shortly before trial, when, pursuant to an agreement between Sylvia and Robert, the boat was placed with a dealer for sale.

Appellant Smith testified that the transaction was to be similar to the previous one involving the motor home and that he expected to be repaid within 30 to 45 days. Smith stated that there was no discussion regarding the community or separate character of the obligation. Smith made no attempt to set off any of the money he paid to Robert for remodeling work or otherwise collect from Robert for the loan.

In testimony not completely consistent with prior deposition testimony and answers to interrogatories, Sylvia maintained that the purchase of the boat came as a complete surprise to her. She claimed that Robert had brought her to see it only after the purchase. Sylvia further denied that she had agreed to sell her stocks to finance the purchase. Although she also denied removing stocks from the safe deposit box, there was documentary evidence that Sylvia had requested entry to the box on August 4, 1987. Sylvia asserted that she would not have agreed to the loan had she known about it in advance.

The trial court found that Smith had loaned the money for the purchase of the boat, although the loan was "not an arms length" transaction between Robert and Smith. The trial court further found, among other things, that although Sylvia knew "contemporaneously" that Smith had provided

the money as a loan, she did not "expressly or implicitly consent" to the loan and that Sylvia had retained possession of the boat to "safeguard and preserve it." The trial court also found that the boat had been used by and had benefited the marital community prior to the couple's separation and that Sylvia had not operated the boat after the separation.

Based on these findings, the trial court concluded that Sylvia Dalton had no separate liability for any portion of the obligation. A judgment in Smith's favor was entered against Robert Dalton separately and against the Dalton marital community.

Smith's principal contention on appeal is that the trial court erred in failing to impose separate liability on Sylvia based on theories of authorization and ratification. He first argues that the trial court's failure to enter specific findings directed to authorization and ratification constitutes reversible error because the record is insufficient to reveal the basis for the trial court's resolution of these theories.

■■ Authorization is essentially a species of consent. *See Nichols Hills Bank v. McCool*, 104 Wn.2d 78, 83, 701 P.2d 1114 (1985). Finding of fact 4 provided in part that Sylvia "did not expressly or implicitly consent to a loan by Craig Smith." The record here, including finding of fact 4, the other findings, and the trial court's oral decision, leaves no doubt that the trial court rejected Smith's authorization and ratification arguments. We find the record sufficient to permit appellate review. *See Schoonover v. Carpet World, Inc.*, 91 Wn.2d 173, 588 P.2d 729 (1978). Moreover, a trial court need not enter negative findings of fact. *Clausing v. DeHart*, 83 Wn.2d 70, 75, 515 P.2d 982 (1973). The absence of a finding regarding a material fact is usually regarded as a finding against the party having the affirmative burden of proving that fact. *Seattle Flight Serv., Inc. v. Auburn*, 24 Wn. App. 749, 751, 604 P.2d 975 (1979).

Smith next maintains that the evidence *compels* a finding that Sylvia authorized or ratified the loan such that she

should be found separately liable. This contention encompasses a challenge to the sufficiency of the evidence supporting the finding that Sylvia did not expressly or implicitly consent to a loan by appellant Smith.

Generally,

[a] spouse's act creating both community liability and separate liability in the acting spouse ordinarily does not create separate liability in the nonacting spouse who has not participated in the transaction, that is, it ordinarily does not create three–way liability.

Cross, *The Community Property Law in Washington (Revised 1985)*, 61 Wash. L. Rev. 13, 122 (1986). There is no contention here that Sylvia made an independent promise to pay. *See U.S. Lumber Co. v. McDonald*, 68 Wn.2d 741, 415 P.2d 77 (1966); *see also Yakima Plumbing Supply Co. v. Johnson*, 149 Wash. 257, 270 P. 829 (1928).

██ Authorization occurs "when one spouse, prior to the initiation of a transaction, indicates his willingness to allow the other to enter into a transaction." *Nichols Hills Bank*, at 83; *see also Short v. Dolling*, 178 Wash. 467, 35 P.2d 82 (1934). Ratification in community property law rests on principles of agency. *Nichols Hills Bank*, at 84. Ratification is the affirmance by a person "of a prior act which did not bind him but which was done or professedly done on his account." *Nichols Hills Bank*, at 85 (quoting Restatement (Second) of Agency § 82 (1958)). Authorization and ratification are questions of fact. *See Nichols Hills Bank.*

In order to establish that Sylvia authorized the loan, Smith relies on evidence tending to show that Sylvia knew about the transaction, participated in the selection of the boat, and that she went to the safe deposit box shortly after the purchase, a circumstance suggesting that she approved of Robert's financing plan. The evidence regarding Sylvia's desire to purchase the boat and the extent of her knowledge of the loan, however, was disputed. Her personal role in the transaction was minimal. She was not present when Smith and Robert paid for the boat. She did not see or sign

the promissory note; nor was there a place on the note for her signature. No one discussed the note with her, and there is no contention that she had any contact with Smith regarding the loan. These circumstances support the trial court's finding that Sylvia did not consent to the transaction to an extent sufficient to compel imposition of separate liability. Mere knowledge of a transaction, even coupled with a failure to repudiate, does not necessarily establish authorization. *Cf. Nichols Hills Bank.*

Similarly, Sylvia's use of the boat several times in the month prior to the couple's separation does not constitute conduct sufficient to compel a finding of ratification. As the trial court found, Sylvia never used the boat after the separation or benefited from her retention of it. Nor does retention of the boat, under the circumstances here, compel a finding of ratification. Sylvia testified that she refused to surrender the boat because she was unsure of the legal consequences of such an act. The evidence, viewed in light of the couple's pending divorce, supports the trial court's finding that Sylvia's intention was to safeguard and preserve the asset.

*Lucci v. Lucci,* 2 Wn.2d 624, 99 P.2d 393 (1940), relied upon by Smith, is distinguishable. The husband's separate liability in *Lucci* was based on the fact that the husband had essentially appointed his wife as an agent to manage a grocery business, that he knew his wife had borrowed a considerable amount of money and invested the money in the community business, and that the money had been used to purchase a truck that the husband used in his business. *Lucci* thus involved substantially more direct participation and retention of benefits than was present here. Moreover, *Lucci* was decided under pre–1972 community property law. *See Cross,* at 122.

■ Smith next contends that he is entitled to a judgment of separate liability against Sylvia based on the doctrines of quasi contract and unjust enrichment.

A quasi contract or a contract implied in law . . . arises from an implied legal duty or obligation. Quasi contracts are

founded on the equitable principle of unjust enrichment which simply states that one should not be "unjustly enriched at the expense of another."

*Lynch v. Deaconess Med. Ctr.,* 113 Wn.2d 162, 165, 776 P.2d 681 (1989) (quoting *Milone & Tucci, Inc. v. Bona Fide Builders, Inc.,* 49 Wn.2d 363, 367, 301 P.2d 759 (1956)). The necessary elements of quasi contracts are "(1) the enrichment of the defendant must be unjust, and (2) the plaintiff cannot be a mere volunteer." *Trane Co. v. Randolph Plumbing & Heating,* 44 Wn. App. 438, 442, 722 P.2d 1325 (1986).

Smith argues that Sylvia should be individually liable as a matter of law because she retained possession of the boat, knowing that he had provided the funds for the purchase and that no payments had been made. This contention is not persuasive for several reasons.

First, there was substantial evidence to support the trial court's finding that Sylvia retained possession of the boat to preserve what arguably was a community asset. Moreover, Smith has identified no basis upon which he may seek recovery based on Sylvia's refusal to give the boat to Robert. Smith himself did not perfect a security interest in the boat.

Second, the doctrine of unjust enrichment is inappropriate in the instant context. Smith's argument obscures the fact that he obtained a judgment against Robert Dalton individually and against the Dalton marital community. As the trial court found, the boat was used by and benefited the marital community. No evidence suggests that Sylvia used or benefited from the boat after the separation. Sylvia has not been individually enriched at Smith's expense, much less "unjustly" enriched.

Smith next maintains that the boat was a "family expense" within the meaning of former RCW 26.16.205,[2] which provides:

---

[2]The statute has remained essentially unchanged since 1881. *See State v. Clark,* 88 Wn.2d 533, 537, 563 P.2d 1253 (1977).

> The expenses of the family and the education of the children, including stepchildren, are chargeable upon the property of both husband and wife, or either of them, and in relation thereto they may be sued jointly or separately . . ..

Smith argues that the statute should be broadly construed to encompass the costs of any item brought into and used by the family. *See generally* 41 Am. Jur. 2d *Husband and Wife* § 371 *et seq.* (1968).

█ Our Supreme Court has observed that family expense statutes "are generally considered to be at least as broad as the common–law duty to provide 'necessaries' for the family." *State v. Clark,* 88 Wn.2d 533, 537, 563 P.2d 1253 (1977). Smith has not cited, however, any Washington decision upholding as a family expense an item that does not arguably fall within the category of "necessaries." *See, e.g., State v. Clark, supra* (legal expense of spouse in criminal action); *In re DeNisson,* 197 Wash. 265, 84 P.2d 1024 (1938) (maintenance of aged and indigent spouse); *State v. Williams,* 4 Wn. App. 908, 484 P.2d 1167 (1971) (medical expense); *Strom v. Toklas,* 78 Wash. 223, 138 P. 880 (1914) (house rental). We decline appellant's invitation to do so now.

The relatively narrow scope of RCW 26.16.205 and its predecessors was recognized in *Bush & Lane Piano Co. v. Woodard,* 103 Wash. 612, 175 P. 329 (1918). In *Bush & Lane* the court rejected the contention that a husband was separately liable under the "family expense" statute where the wife had contracted to purchase a piano on her own and the husband had not consented to or ratified the transaction. In refusing to characterize the piano as a "family expense," even though the piano arguably was used in connection with the family, the court reviewed the history and purpose of the statute and concluded

> it was not intended by the section in question to make every article of personal property purchased by the wife and used in

connection with the family a family expense. This would be to read out of the act the provision giving the wife the right to deal with her own separate property, and would nullify the provision exempting the husband's separate property from the separate debts of the wife.

*Bush & Lane,* at 616. Although the court's decision in *Bush & Lane* rests in part on community property principles that are no longer valid, the basic thrust of the analysis remains persuasive.

In summary, given the long application of RCW 26.16-.205 and its predecessors as a "necessaries" statute, we find no authority for holding here that the purchase of a ski boat constitutes an "expense of the family." Smith does not suggest that a ski boat falls within the scope of a "necessaries" statute.

Smith's final contention is that the trial court erred in failing to award the entire amount of $8,745 in attorney's fees that he requested. The request was supported by an affidavit and billing statements. The trial court found $5,000 to be reasonable and awarded that amount. The record does not indicate, however, why the trial court reduced the requested amount by about 43 percent. Nor does it appear that Sylvia disputed the amount requested by Smith.

■ Generally, the amount of an attorney's fee award is discretionary and will not be overturned on appeal absent an abuse of discretion. *See, e.g., Boeing Co. v. Sierracin Corp.,* 108 Wn.2d 38, 65, 738 P.2d 665 (1987). Here, however, because the record does not indicate how the court determined the award, we vacate the award and remand for reconsideration. *See In re Marriage of Sanborn,* 55 Wn. App. 124, 130, 777 P.2d 4 (1989). Neither side is entitled to attorney's fees on appeal.

With the exception of the attorney's fee award, the judgment is affirmed.

COLEMAN, C.J., and GROSSE, J., concur.